223 So.2d 68 (1968)
Carl A. COPPOLINO, Appellant,
v.
STATE of Florida, Appellee.
No. 67-193.
District Court of Appeal of Florida. Second District.
November 8, 1968.
Rehearing Denied June 17, 1969.
*69 F. Lee Bailey, Boston, Mass., James M. McEwen, Tampa, and James Russ, Orlando, for appellant.
Earl Faircloth, Atty. Gen., George R. Georgieff, Asst. Atty. Gen., Tallahassee, Frank Schaub, State Atty., and William Strode, Asst. State Atty., Bradenton, for appellee.
LILES, Chief Judge.
The defendant, Carl Coppolino, was tried upon an indictment charging him with the first degree murder of his wife Carmela. The jury found defendant guilty of murder in the second degree and pursuant to this verdict judgment and sentence were entered. From this judgment and sentence defendant appeals.
Defendant's trial was a lengthy and involved one wherein medical and scientific witnesses were introduced by both sides. The witnesses presented a vast amount of complex and conflicting scientific testimony regarding the cause of death of Carmela Coppolino. The defendant in his second point on appeal states in reference to the scientific testimony presented by the State, "the verdict is not supported by sufficient evidence and is against the weight of the evidence."
At trial the State introduced a Dr. Helpern, a pathologist who serves as chief medical examiner for the City of New York, and a Dr. Umberger, a toxicologist who is in Dr. Helpern's office. Dr. Helpern testified that: he performed an autopsy on the exhumed body of Carmela Coppolino and as a result of his findings concluded that she was in good health at the time of death, at the conclusion of his autopsy he was not able to determine the cause of death, he found a needle injection tract in the left buttock of the deceased, following his autopsy he turned over certain portions of Carmela Coppolino's body tissue to Dr. Umberger so that Umberger could perform chemical analyses and tests on that tissue. Dr. Umberger testified that he first performed a "general unknown" test which was designed to disclose the presence of certain drugs and poisons in the body tissue. The results of this "general unknown" test were negative. Dr. Umberger then attempted to establish a method whereby he could determine if unusual amounts of the component parts of succinylcholine chloride were present in the body tissue. Dr. Umberger testified that some of his tests and procedures were standard ones and that some were new. As a result of his tests Dr. Umberger reached the conclusion, and so testified, that Carmela Coppolino received a toxic dose of succinylcholine chloride.
Dr. Helpern was then recalled and asked his opinion as to the cause of death. He stated that based upon his negative findings from the autopsy and upon Dr. Umberger's positive findings concerning the component parts of the drug, succinylcholine chloride, he concluded that the decedent died from an overdose of said drug.
A Dr. La Du was called by the State and he testified that he found a minute quantity of substance at the needle injection site *70 which was consistent with the component parts of succinylcholine chloride. Also, a Dr. Cleveland was called and he, in response to a hypothetical question, stated that based upon the negative findings of Dr. Helpern and the positive findings of Dr. Umberger he was of the opinion that death resulted from a toxic dose of succinylcholine chloride.
It is clear from a reading of the transcript that the State's proof of the corpus delicti depends almost solely upon the testimony of Helpern and Umberger and more specifically upon the tests performed by Umberger from which he concluded that the decedent received a toxic amount of succinylcholine chloride. We find that the question is not actually one of sufficiency or weight of the evidence for there was ample evidence before the jury to support its finding as to cause of death. Instead the question really involves the competency of the evidence. That is, should the trial judge have allowed into evidence testimony concerning Dr. Umberger's tests. Actually, the defendant does contest the competency of the testimony concerning Dr. Umberger's tests even though he does not specifically mention it in his point on appeal.
Several witnesses, including those called by the State, testified that prior to the performance of the tests in question it was believed impossible by medical scientists to demonstrate the presence of succinylcholine chloride or its component parts in the body. However, Dr. Umberger, using various procedures, concluded that it was possible to detect succinic acid, a component of succinycholine chloride, in the body tissue and he testified that he found this acid in abnormal amounts.
The general rule regarding admission of scientific evidence is:
"Where the evidence is based solely upon scientific tests and experiments, it is essential that the reliability of the tests and results thereof shall be recognized and accepted by scientists or that the demonstration shall have passed from the stage of experimentation and uncertainty to that of reasonable demonstrability. * * *" 2 Jones on Evidence § 457 (5th ed. 1958). See also 31 Am.Jur.2d Expert and Opinion Evidence § 44; Notes, Admissibility of Evidence Obtained by Scientific Devices and Analyses, 5 U.Fla.L. Rev. 5 (1952).
Florida has apparently adopted this rule. See Kaminski v. State, Fla. 1953, 63 So.2d 339, at page 340, wherein the court in excluding evidence of the giving of a lie detector test quoted from Frye v. United States, 54 App.D.C. 46, 293 F. 1013, 1014, 34 A.L.R. 145 (1923), saying:
"`We think the systolic blood pressure deception test has not yet gained such standing and scientific recognition among physiological and psychological authorities as would justify the courts in admitting expert testimony deduced from the discovery, development, and experiments thus far made.'"
However, it is also a rule in Florida that the trial judge enjoys wide discretion in areas concerning the admission of evidence and that his ruling on admissibility of evidence will not be disturbed unless an abuse of discretion is shown. Mutual Life Ins. Co. of New York v. Bell et al., 1941, 147 Fla. 734, 3 So.2d 487.
The problem presented to the trial judge was, were the scientific tests performed by Umberger so unreliable and scientifically unacceptable that their admission into evidence was error.
Drs. Umberger, Helpern and Cleveland stated that they held their conclusions and opinions with reasonable medical certainty. The defendant produced scientific witnesses who challenged the conclusions of the State's witnesses and the methods and tests used to reach those conclusions. In this case, unlike those involving lie detector tests or intoxication tests, there is a dearth of literature and specific case law to guide the trial and appellate courts. The trial *71 court listened to the testimony of the expert witnesses and in an exercise of his discretion ruled that the tests in question were sufficiently reliable to justify their admission.
On appeal it is incumbent for defendant to show that the trial judge abused his discretion. This the defendant has failed to do.
The trial court in instructing the jury gave instructions on all degrees of murder and manslaughter. Defendant in his fifth point on appeal contends that the trial judge committed reversible error by instructing the jury on second degree murder, third degree murder and manslaughter. Defendant argues that it is logically impossible for someone to commit second degree murder by the deliberate use of drugs or poisons and that the instructions invited a compromise verdict.
Florida Statute § 919.14, F.S.A. provides:
"Determination of degree of offense.  If the indictment or information charges an offense which is divided into degrees, without specifying the degree, the jurors may find the defendant guilty of any degree of the offense charged; if the indictment or information charges a particular degree the jurors may find the defendant guilty of the degree charged or of any lesser degree. The court shall in all such cases charge the jury as to the degrees of the offense."
In the recent case of Brown v. State, Fla. 1968, 206 So.2d 377, the Florida Supreme Court had occasion to discuss this statute. The court said at page 381:
"(1) CRIMES DIVISIBLE INTO DEGREES. Section 919.14, applies only to those crimes which are divided into degrees, e.g., unlawful homicide (Fla. Stat. §§ 782.04, 782.06, F.S.A.), and, arson (Fla. Stat. §§ 806.01-806.04, F.S.A.). If an accused is charged with the highest degree of such a crime, the court should charge the jury on all lesser degrees. In this category it is immaterial whether the indictment specifically charges the lesser degrees or whether there is any evidence of a crime of such degree. Killen v. State, 92 So.2d 825 (Fla. 1957); Brown v. State, 124 So.2d 481 (Fla. 1960). The court must instruct on the lesser degrees simply because § 919.14 clearly requires it, and not because such degrees are necessarily included lesser offenses. In many cases the elements of the lesser degrees are totally distinct from the offense charged. See e.g., Clemmons v. State, 43 Fla. 200, 30 So. 699 (1901). If the evidence is sufficient to support a verdict of guilty of the offense charged, the jury has the power, under § 919.14 to find the accused guilty of a lesser degree of the offense regardless of the lack of evidence as to such degree. Killen v. State, supra; Hodella v. State, 158 Fla. 94, 27 So.2d 674 (1946). Under the statute, the trial judge should, and if requested must, instruct on all lesser degrees of the offense, if the case is allowed to go to the jury for a determination of guilt or innocence on the offense charged. Brown v. State, 124 So.2d 481 (Fla. 1960)."
At page 382 the court added:
"Here is a difference between § 919.16,  the necessarily included offense statute  and § 919.14  the divisibility into degrees statute. Under the former the lesser offense must necessarily be included in the offense charged. Hence, it is necessary to prove the lesser in order to prove the greater. Under § 919.14, the lesser degrees of the major crime are not necessarily included in it, and, therefore, are not essential elements of proof in establishing it. Nevertheless, the statute, § 919.14, permits a jury to convict of the lesser degree regardless of the accusation and proofs."
In light of § 919.14 and Brown it is clear that the trial judge did not err by giving the instructions in question.
*72 In his sixth point on appeal, defendant asserts that the trial judge erred by admitting into evidence certain testimony given by one Marjorie Farber concerning crimes committed by her and defendant. This witness who was called by the State testified, over repeated defense objections, that: between Spring 1962 and January 1964 she and defendant were "lovers," during this time defendant was married to the decedent, and pursuant to their "affair" she and defendant made several trips together including trips to Florida. The witness then testified that the defendant made certain allegedly incriminating statements concerning the death of his wife in her presence.
Clearly, the activities testified to by the witness constituted criminal acts. See Florida Statute 798.03, F.S.A. which pertains to fornication.
In Williams v. State, Fla. 1959, 110 So.2d 654, 663, the court clarified the rule concerning admission of evidence of other crimes. The court in pointing out that the primary question was one of relevancy of the evidence sought to be introduced stated:
"Evidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific exception or rule of exclusion. * * * "
Generally, evidence of another crime is considered relevant and therefore admissible if it shows motive, criminal intent, guilty knowledge, absence of mistake, common scheme, identity, pattern of criminality or if it tends to foreclose a defense otherwise open to the accused. Williams v. State, Fla. 1962, 143 So.2d 484; Suarez v. State, 1928, 95 Fla. 42, 115 So. 519. The testimony in question does not fall within any of the above mentioned categories. However, the State claims that the testimony in dispute was introduced in order to establish the intimate relationship between the witness and defendant so that the jury would believe that the defendant did confide in her and make damaging statements in her presence.
We have found no authority, nor have we been referred to any by the State, supporting the proposition that the State can introduce testimony of unrelated crimes in an attempt to strengthen the credibility of its witness. However, through independent research, we have become familiar with the case of Rhodes v. State, 1932, 104 Fla. 520, 140 So. 309. In Rhodes a character witness was testifying on behalf of defendant. The State, in an attempt to show that the character witness was interested in the welfare of the defendant and thereby impeach said witness, introduced testimony of a prior unrelated crime for which defendant was charged. The Florida Supreme Court held that such testimony was improper and should have been stricken. Certainly, if evidence of unrelated crimes is inadmissible to attack the credibility of a witness it is also inadmissible to buttress the credibility of a witness.
We believe that the testimony in question was irrelevant to the proper issues of the case, that its sole effect was to attack the character of the accused and that the trial court erred by admitting it into evidence. However, the fact that an error was committed in admitting testimony does not automatically result in reversal, there must be a showing that such error was harmfully prejudicial to the defendant.
"The improper admission of proof of other crimes does not always constitute reversible error and convictions may be sustained when the nature of the other crimes is so minor that it is unlikely that the defendant was prejudiced, or the evidence of guilt so strong that it is improbable that a contrary result would be reached." 1 Wharton's Criminal Evidence, Section 233 (Supp. 1968).
Florida Statute § 924.33, F.S.A. provides:
"When judgment not to be reversed or modified.  No judgment shall be reversed unless the appellate court after an *73 examination of all the appeal papers is of the opinion that error was committed which injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant."
In Coggins v. State, Fla.App. 1958, 101 So.2d 400, the defendant was charged with first degree murder. He appeared at trial in a Marine uniform bearing the chevron of a corporal. The State introduced testimony of defendant's bad conduct while in the service, ostensibly for the purpose of showing that prior to the commission of the homicide defendant had been reduced to the rank of private. The appellate court held that although error was committed it was not harmful. See Rhodes v. State, supra.
The defendant in Jordan v. State, 1932, 107 Fla. 333, 144 So. 669, was charged with breaking and entering. The State in cross-examining the defendant questioned him about previous arrests and a previous conviction, even though the accused had not placed his character in issue. The court held that although error was committed by the admission of these questions, in light of the entire record, reversal was not justified.
In Cornelius v. State, Fla. 1950, 49 So.2d 332, the defendant, who was charged with first degree murder, had placed his reputation as being a peaceful and law-abiding citizen in issue. The State introduced rebuttal evidence of specific acts of violence and turbulence on the part of defendant. At page 335 the court stated that defendant's contention of error "appears to be well taken but it does not follow that the error was harmful or prejudicial." The court further said:
"In determining whether the error of which complaint is made was harmful or prejudicial, we must decide upon examination of all the evidence whether the result would have been different had the improper evidence been excluded. The evidence in this case `leaves no room for reasonable doubt of the defendant's guilt' of manslaughter and the admission of the rebuttal testimony with which the appellant finds fault did not constitute harmful or prejudicial error. We find from the evidence that the appellant received a fair and impartial trial and conclude from the jury's verdict of guilty of manslaughter, when it reasonably could have found a verdict of guilt of a higher degree of homicide, that the jury was not in fact prejudiced against the appellant."
In this case the jury could have reasonably found defendant guilty of murder in the first degree.
In deciding whether the testimony complained of was prejudicial it must be considered in light of the entire transcript of testimony. Mrs. Farber's testimony comprised a very minor portion of the trial. That portion of her testimony which is in dispute occupies roughly six pages of a transcript of testimony totaling 1842 pages. It does not appear that undue time was spent on her testimony nor does it appear that undue emphasis was placed on it before the jury.
The trial judge in instructing the jury stated:
"The court admitted testimony by a witness that she and the defendant had been lovers and had been intimate. If you find this evidence creditable (sic) you must not consider it in any way as impuning (sic) the character of the defendant or as indicating that he is the type of person who is likely to commit a crime."
This instruction tended to mitigate any prejudice that resulted from the erroneous admission of Mrs. Farber's testimony.
In Boyett v. State, 1928, 95 Fla. 597, 116 So. 476, the court pointed out one of the dangers of admitting evidence of similar crimes. The court stated at page 476:
"Evidence that a defendant has committed a similar crime, or one equally *74 grave, has a tendency to promote a more ready belief by the jury that he might have committed the one with which he is charged, thereby predisposing the mind of the juror to believe the prisoner guilty."
The crime of fornication is neither similar to the crime of murder nor equally heinous nor is it a crime of violence. It is highly improbable that testimony concerning defendant's commission of this relatively minor crime would cause the jury to infer that defendant was likely to commit murder.
Upon considering the nature of the crime to which the testimony in question was given in conjunction with the entire record we believe there is no reasonable probability that the verdict would have been different had the improper evidence been excluded. Therefore upon consideration of the above discussed case law, and Florida Statute § 924.33, F.S.A., we find that although it was error to admit the testimony in question, this error was not harmfully prejudicial to defendant and did not deny him a fair trial.
The defendant in his seventh point on appeal complains of certain questions asked by the State of witnesses Heidi Gibson and Millie Smith. The State on cross-examination asked Heidi Gibson, now defendant's stepdaughter, whether she had stated in the presence of Millie Smith that she thought defendant had killed his first wife, Carmela. Heidi Gibson testified that she had not made such a statement.
Later the State introduced Millie Smith as a witness and asked if Heidi Gibson had ever expressed the belief, in her presence, that defendant killed the decedent. Smith replied that Heidi Gibson had stated "I wouldn't be surprised if he killed his first wife." However, acting upon defendant's objections the trial judge instructed the jury to disregard the testimony of Millie Smith.
It was improper for the State to ask Heidi Gibson whether she had ever expressed an opinion as to defendant's guilt. Blackwell v. State, 1918, 76 Fla. 124, 79 So. 731, 1 A.L.R. 502; Gibbs v. State, Fla. App. 1967, 193 So.2d 460. Also, the State's attempt by use of a rebuttal witness, Millie Smith, to show that Heidi Gibson had expressed an opinion as to defendant's guilt was improper. Myers v. State, 1901, 43 Fla. 500, 31 So. 275.
However, as stated above, witness Smith's testimony was stricken leaving before the jury only the statement by Heidi Gibson that she had not expressed an opinion as to defendant's guilt. Thus, it appears that the questions complained of were not harmful to defendant and are not grounds for reversal.
The defendant's other five points on appeal have been carefully considered and found to be without merit.
It appears to this court that the defendant received a fair trial free from prejudicial error, therefore the judgment is affirmed.
HOBSON, J., concurs.
MANN, J., concurs specially.
MANN, Judge (concurring specially).
I have arrived at my Brother LILES' conclusion by a different route.
Carmela Coppolino was alive and well on August 28, 1965. The next morning she was dead, of no natural cause discoverable upon autopsy of her exhumed body four months later. A general toxicological investigation disclosed no possible cause of death. A puncture wound in the left buttock like that which a needle would make, and the track of a needle disclosed by examination of the subcutaneous fat, suggested death by something injected into her body.
Carl Coppolino was an anesthesiologist and had used succinylcholine chloride. It is a muscle relaxant which, in the absence of artificial respiration, will cause a cessation *75 of breathing. There was evidence that it was thought by many and said by Coppolino to have been undetectable in the body after death, and that Coppolino had bought a quantity of it in June. The state attorney postulated that this right-handed woman had not committed suicide, but had died as a result of the injection by the defendant of this drug.
The tests by which the medical examiner sought to determine whether death was caused by succinylcholine chloride were novel and devised specifically for this case. This does not render the evidence inadmissible. Society need not tolerate homicide until there develops a body of medical literature about some particular lethal agent. The expert witnesses were examined and cross-examined at great length and the jury could either believe or doubt the prosecution's testimony as it chose.
After a three-week trial Coppolino was convicted of murder in the second degree. He rests his argument that the judgment and life sentence entered upon this verdict cannot be upheld upon an especially seductive syllogism: Murder in the second degree is murder without premeditation. Murder by injection of succinylcholine chloride is of necessity done with premeditation. Therefore Coppolino cannot be guilty of murder in the second degree. It is the arrival at sound conclusions from false or irrelevant premises which has given formal logic a bad name among sensible people. This argument might well persuade a jury that the offense was more serious than they found it to be, which might explain its being made to us rather than to the jury. But we do not review facts. We review the legal basis for findings of fact. This difference in role between an appellate court and a jury underlines the speciousness of the argument. In the game of shuffleboard, a puck thrust with sufficient force to take it beyond a line separating a quadrangle marked "7" from one marked "8" counts for eight points. Thrust with sufficiently less force to stop it short of the line, it counts for seven. Thrust with such intermediate force as to cause it to touch the line, however slightly, it counts for nothing. The appellant would persuade us that murder is the same sort of a game.
The court was obligated by statute, Fla. Stats. § 919.14, F.S.A., to charge the jury on all degrees of murder and manslaughter. See Brown v. State, 206 So.2d 377 (Fla. 1968). If the jury had any reasonable doubt as to premeditation, they were at liberty to find Coppolino guilty of murder in the second degree and under oath not to convict him of murder in the first degree, which demands a finding of all the elements beyond that reasonable doubt. He cannot complain here of being convicted of a lesser degree of murder than the evidence would support. Ammons v. State, 88 Fla. 444, 102 So. 642 (1924); Brown v. State, 31 Fla. 207, 12 So. 640 (1893); Jimenez v. State, 158 Fla. 719, 30 So.2d 292 (1947).
I differ with Chief Judge LILES on the admissibility of Marge Farber's testimony. It is, in my view, clearly admissible to prove motive. Much of the testimony in this trial pieced together the story, not that Carl Coppolino had any particular hostility toward Carmela, but that she had no further utility to him. Her father had helped them financially but was now retired. She anticipated an income from the practice of medicine until she failed the basic science examination required of all practitioners of the healing arts for licensure in Florida. His tangled emotional state was attested by the Farber affair, his staying for several nights in a motel room a mile or so from his home to think through his marriage, his romance with Mary Gibson, whom he married six weeks after Carmela's death and who has stood by him through all these subsequent troubles. There was evidence that a claimed cardiac condition on account of which he drew disability income in excess of twenty thousand dollars a year could not be confirmed by Sarasota physicians and was under investigation by the insurance company.
*76 The admissibility of relevant evidence is largely discretionary with the trial court, and over the years the increasing intelligence of jurors has broadened the scope of admissibility, particularly with reference to evidence admissible for one purpose but inadmissible for another. See Goodhart, A Changing Approach to the Law of Evidence, 51 Va.L.Rev. 759 (1965). The trial judge here, whose conduct of the trial was admirable, in general, could have made it plainer at the time of reception of the evidence that it was admitted not to show bad character but a possible motive for the crime, but later made this point clear to the jury. As Lord Chief Justice Goddard said in Rex v. Kritz, [1950] 1 K.B. 82, at 89, "Juries are not such fools as they are very often thought to be."
I cannot believe that evidence of an affair with Mrs. Farber, which involves the crime of fornication, is more shocking to the jury than evidence that the defendant and Mary Gibson, wearing matching Bermuda shorts, happily played bridge at Mrs. Maxwell's studio. I deem it unnecessary for the legislature to repeal the statute proscribing fornication in order to make evidence of an extra-marital affair admissible to show a motive for uxoricide. The case law supports admissibility. I accept the case cited by appellant as grounds for reversal as authority for the correctness of the trial judge's action here. In Commonwealth v. Burke, 339 Mass. 521, 159 N.E.2d 856, 77 A.L.R.2d 451, (1959), evidence of an affair terminated seven months before the wife's murder was held inadmissible because remote. In that case Mr. Justice Spalding said (id., at p. 864):
"Evidence that one accused of killing his wife has formed an attachment for another woman may form the basis of an inference that the accused entertained feelings of hostility toward his wife. Commonwealth v. Bonomi, 335 Mass. 327, 355, 140 N.E.2d 140. * * *
"* * *
"The trial judge, of course, must be accorded a broad area of discretion in passing upon the admissibility of evidence of this type. We think, however, that the evidence here, unconnected with later events of like nature, was too remote. In cases where such evidence has been held admissible it will appear that the relationship shown was less remote in time. See Commonwealth v. Howard, 205 Mass. 128, 91 N.E. 397 (relationship continued to the time of wife's death); Commonwealth v. Mercier, 257 Mass. 353, 153 N.E. 834 (relationship continued until three weeks before wife's death); Commonwealth v. Bonomi, 335 Mass. 327, 140 N.E.2d 140 (relationship continued until day wife disappeared). See also Commonwealth v. Abbott, 130 Mass. 472. We intend no suggestion that proof of hostility between the defendant and his wife in February and March would not have been competent. On the contrary, we think it would have been."
Relevance is the critical test. See Williams v. State, 110 So.2d 654 (Fla. 1959).
There is evidence that Mrs. Farber saw Coppolino on August 28th and again on the 29th, that she offered to  even wanted to  keep the Coppolino children and that she would like to have been the next Mrs. Coppolino. There is no remoteness here which would exclude this evidence, accompanied as it was by proper admonition.
I concur in Chief Judge LILES' opinion that the other issues, no more substantial than the objection to the State's peremptory challenge of a juror who happened to be a chemist, do not warrant extended discussion, and in the judgment of affirmance.