## STATE OF FLORIDA v CAIN
### Case No. 11723-90
County Court, Marion County

August 20, 1990

### APPEARANCES OF COUNSEL

**Bradley E. King,** State Attorney, for plaintiff.
**David Lawrence Cain,** pro se.

### OPINION OF THE COURT

HALE R. STANCIL, County Judge.

### *ORDER FINDING DEFAULT NOT GUILTY DUE TO INSUFFICIENT EVIDENCE*

THIS CAUSE came on to be tried the 17th day of August, 1990.

Having considered the testimony and the other evidence presented, the Court finds:

1. The defendant was stopped on the 25th day of May, 1990 and issued a citation under F.S. 316.2953[1] for having the side windows on his vehicle unlawfully sunscreened.

2. Officers C. D. Maier and Joseph Morrison of the Ocala Police Department before issuing the defendant a citation used a Model: WT02 (Serial No. 5225) Window Trans-Meter light measuring device manufactured by Mars Single Light Co., Naples, Florida.

3. The device consists of three basic parts a light source, light detector, calibration filter plus a carrying case. A rechargeable battery in each unit is utilized as a power source. A calibration filter is supplied by the manufacturer marked with a strip of removable tape across the top reading: OMI Calibration Filter #353 Transmission Range: 22-25%.[2] No instructions other than a video were supplied. There is no check list to follow. There is no meter or other instrument to indicate if the power source is sufficient to operate the unit or when the lens should be cleaned or how the unit should be maintained when not in use. The calibration filter submitted contains both fingerprints and a few scratches. Does this affect the reading of the measuring device?

4. Both officers were self-taught in how to use the light measuring device by reviewing a 5 minute video submitted by the manufacturer.

5. Officer B. E. Cox also trained in the use of said calibration device testified before the Court on the 20th day of August, 1990 he has had trouble trying to calibrate the device for use numerous times. Even in the Court's presence Officer Cox could not properly calibrate the light measuring device.

6. Although F.S. Chapter 316.2951 defines certain terms including reflectance, sunscreening material, transmittance, window and wind-

---

[1] F.S. 316.2953 Side windows; restrictions on sunscreening material.—A person shall not operate any motor vehicle on any public highway, road, or street on which vehicle the side wings and side windows on either side forward of or adjacent to the operator's seat are composed of, covered by, or treated with any sunscreening material or other product or covering which has the effect of making the window nontransparent or which would alter the window's color, increase its reflectivity, or reduce its light transmittance, except as expressly permitted by this section. A sunscreening material may be applied to such windows, if when tested on ⅛-inch clear glass, the material has a total solar reflectance of visible light of not more than 25 percent as measured on the nonfilm side and a light transmittance of at least 35 percent in the visible light range.

[2] If this calibration filter is important why isn't this information etched in the glass?

shield it does not contain any standards for certification of light measuring devices or the users of such devices.

7. This appears to be a case of first impression as no decision has been found wherein a Florida Court has ruled on F.S. 316.2953 or a similar statute.

8. No testimony or other evidence (other than the manufacturer's video) has been submitted verifying the accuracy of said measuring device or the steps taken in the manufacturing process to insure accuracy and what manufacturing standards if any are utilized before such unit is shipped. Neither is there any mention whether such unit ever needs to be rechecked. There has been no certification by anyone or any agency that the unit in question meets any criteria whatsoever.

9. Apparently no standards were adopted when the legislation was enacted by the State.

Regarding evidence obtained by scientific devices or analysis it is to be noted that,

> "Where the evidence is based solely on scientific devices and tests, it is essential that the reliability thereof shall be recognized and accepted by scientists or that they shall have passed from the stage of experimentation and uncertainty to that of reasonable demonstrability." 23 Fla. Jur. 2nd, Evidence and Witnesses § 135, See *Coppolino v State,* 223 So.2d 68 (Fla. 2d DCA 1968).

Although the charged violation involved in the matter currently before this Court is civil rather than criminal the standard of proof required under F. S. 318.14(6) is beyond a reasonable doubt. The legislature in enacting Florida's D.U.I. laws conditioned the admissibility of the analysis of a person's breath or blood upon it being performed substantially[sic] according to methods approved by the Department of Health and Rehabilitative Services and for this purpose authorized the Department of Health and Rehabilitative Services to approve satisfactory techniques or methods. See F. S. 316.1932(b)(1) and F.S. 316.1933(2)(b).

When one is charged with speeding, a civil infraction, F.S. 316.1906(2) requires that certain enumerated requirements be met before a "radar" reading is admissible.[3]

---

[3] Evidence of the speed of a vehicle measured by any radar speed-measuring device shall be inadmissible in any proceeding with respect to an alleged violation of provisions of law regulating the lawful speed of vehicles, unless such evidence of speed is obtained by an officer who:

(a) has satisfactorily completed the radar training course established by the Criminal Justice Standards and Training Commission pursuant to § 943.17(1)(b).

ACCORDINGLY,

The Court finds that the evidence submitted is insufficient to prove beyond and to the exclusion of a reasonable doubt that the defendant's side windows were in violation of F.S. 316.2953 and said DAVID LAWRENCE CAIN may go hence without day.

DONE AND ORDERED in Chambers at Ocala, Marion County, Florida this 20th day of August, 1990.

---

(b) Has made an independent visual determination that the vehicle is operating in excess of the applicable speed limit.

(c) Has written a citation based on evidence obtained from radar when conditions permit the clear assignment of speed to a single vehicle.

(d) Is using radar which has no automatic speed locks and no audio alarms, unless disconnected or deactivated.

(e) Is operating radar with audio Doppler engaged.

(f) Is using a radar unit which meets the minimum design criteria for such units established by the Department of Highway Safety and Motor Vehicles.