## STATE OF FLORIDA v PAGNAM
### Case No. 66588.89-DC
County Court, Dade County

April 3, 1991

## OPINION OF THE COURT

JONATHAN T. COLBY, County Judge.

### ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS BREATH TEST RESULTS

THIS CAUSE having come on to be heard on the Defendant's motion, and the Court, having heard arguments of counsel and being otherwise fully advised in the premises thereof, makes the following findings of fact:

1. The Defendant was arrested on July 4, 1990, at approximately 3:15 a.m. Following his arrest, he was transported to the Metro Dade Police Department, and given a breath test on the Intoxilyzer 5000R, Serial No. 66-001665.

2. The Intoxilyzer 5000R came into use in approximately March of 1990. Once a month, as required by Department of Health and Rehabilitative Services (HRS) regulations, individuals responsible for the monthly maintenance of these systems perform operations tests on the machine by having the machine analyze a known standard of ethanol (alcohol) which has been produced by a laboratory which forwards those standards to them. As a part of the necessary operational checks on the machine, they introduce acetone into the ethanol sample. The purpose of this testing is to ensure compliance with HRS regulations, and to ensure fair and accurate readings. The machine is tested with both ethanol and ethanol mixed with acetone, as described below:

    a) First of all, according to HRS regulations, the error factor in the instrument is to be no more than .05%. In other words, if a .100 ethanol known standard is being analyzed in a test, the result must not fall below .095 or above .105. To verify this level of accuracy, a .10 ethanol standard test is used.

    b) Second, in order to further test the machine's ability to render accurate results and fair readings, the officers performing the maintenance are required to insert a small quantity of acetone into the machine along with the ethanol. In response, the machine is supposed to indicate that acetone is present and further, it is supposed to eliminate the acetone from any possible test results and report an ethanol-only result, still within the same .05 (five percent) level of reliability.

The .05 figure is specified by HRS in Rule 10D-42.022.

3. In preparation for the trial in this case, defense counsel followed up on her discovery requests and acquired the maintenance and operational test results for the Intoxilyzer 5000 which was used to test Defendant Pagnam at the time of his arrest. Defense counsel was furnished with Form 1514, filled out by Officer P. M. Shugrue for the months of June and July, 1990. These forms require that not only ethanol results be shown in percentage, but also that acetone results be shown as numerical percentage results. It is clear from these forms that a numerical percentage is required to complete the form. Florida Statute § 120.52(16) indicates that a "rule" means each agency's statement of general applicability that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of an agency, and includes *any form* which

114

imposes any requirement or solicits any information not specifically required by statute or by an existing rule. The term also includes the amendment or repeal of a rule.

4. Clearly then, HRS Form 1514, which requires a numeric description of the acetone results is *applicable as a rule,* and the failure to report the acetone results in a percentage manner as required by the form, violates this rule.

5. The officer filling out Form 1514 in June and July merely placed the letters "SAT" in the space that appears as a blank with a % sign following, i.e., "SAT%".

6. The importance of the rule is clear: without reporting the acetone results in numerical style, one is unable to tell from viewing the form whether or not the machine is properly eliminating acetone within the required five percent accuracy as set forth in HRS Rule 10D-42.022. Moreover, in the instant case, the backup evidence cards which reflect a printout reporting the ethanol and acetone results were lost for the month of August. Without these proper forms and without the backup test results it is impossible to know whether the machine was properly functioning and eliminating acetone. If the machine was not eliminating acetone properly, the results are not reliable.

Based on the foregoing findings of fact, the Court makes the following conclusions of law:

Florida Statute § 316.1932(b) provides that:

An analysis of a person's breath, in order to be considered valid under this section, must have been performed substantially according to the methods approved by the Department of Health and Rehabilitative Services. For this purpose, the Department is authorized to approve satisfactory techniques and methods. Any insubstantial differences between approved techniques and actual testing procedures in any individual case shall not render the test or test results invalid."

The result of a scientific test is admissible into evidence if the reliability of the test is generally accepted by scientists. *Coppolino v State,* 223 So.2d 68, 70 (Fla. 2d DCA 1968), *appeal dismissed,* 234 So.2d 120 (Fla. 1969), *cert. denied.* 399 U.S. 927 (1970). However, § 316.1932(b) and § 316.1934(3) establish a statutory foundation for the admissibility of breathalyzer test results. Before the trier of fact is permitted to hear and consider the test results, the State must demonstrate substantial compliance with HRS Rules. The purpose of requiring compliance with testing procedures promulgated by HRS is to

ensure the accuracy of such tests. Fla. Admin. Code 10D-42.022, Rule 10D-42.024(c) requires that the test instrument and device be inspected at least once each calendar month by a technician to ensure the general cleanliness, appearance, *accuracy.* Presumably, if a machine is found to be inaccurate during a monthly test, steps should be taken to diagnose and correct the problem.

The requirement that testing devices follow regulations which will give accurate blood alcohol testing to guarantee accurate results is well established in Florida law. *State v Bender,* 382 So.2d 697 (Fla. 1980); *Gargon v State,* 503 So.2d 421 (Fla. 3d DCA 1987). In the case at bar, there is a substantial non-compliance with the statute and regulations, because the testing officer's failure to properly complete the form, to wit: to follow the rules as set forth by HRS regulations is substantial noncompliance. It leaves the triers of fact to rely on an officer's uncorroborated opinion based on numbers we do not know.

In the case at bar, the State is unable to show substantial compliance with HRS rules and regulations, and has failed to follow the rules as set forth by those regulations and as defined by Florida Statute § 120.52.

In oral argument in the instant case, the State sought to rely on *State v Ridgeway,* 514 So.2d 418 (Fla. 1st DCA 1987), alleging that proper maintenance in the month *following* the breath test was substantial compliance with HRS Rules. However, there is a significant distinguishment between the facts in *Ridgeway* and those in the case at bar, to wit: In *Ridgeway,* defendants were tested five and thirty-nine days respectively *after* a valid inspection of the breathalyzer system in question. The State failed to test the system in the month that followed the breathalyzer tests at issue. This means that the court in *Ridgeway* could be assured that as few as five days or at most thirty-nine days *prior* to the actual breathalyzer test, the system was properly functioning.

In the case at bar, there is *no evidence* that the Breathalyzer 5000 was properly tested as to acetone elimination in the months of May, June, July, or August; John Pagnam was tested on July 4th. The State was not able to test the acetone elimination percentages as required. No percentages were ever listed, and no backup evidence cards were ever preserved to indicate whether or not the system was properly functioning. The system was then tested in September. There was still no percentage listed, but a backup card was preserved. This is clearly akin to closing the barn door *after* the horse escapes. In other words, there is no evidence that the system was properly functioning for

116

several months prior to or during Defendant Pagnam's tests. We only know that the month after his test an inspection was conducted with backup cards and the system was functioning. This does not ensure proper inspections *prior* to testing the Defendant.

Based on the foregoing, it is hereby

CONSIDERED, ORDERED and ADJUDGED that the Defendant John Pagnam's Motion to Suppress Breath Test Results is GRANTED.

DONE and ORDERED in Miami, Dade County, Florida, this 3rd day of April, 1991.