506 So.2d 467 (1987)
Elwin J. ROSE, Appellant,
v.
STATE of Florida, Appellee.
No. BL-444.
District Court of Appeal of Florida, First District.
April 30, 1987.
*468 Michael E. Allen, Public Defender, and P. Douglas Brinkmeyer, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellee.
WIGGINTON, Judge.
The appeal before us challenges the trial court's refusal to allow a witness to testify as an expert, and to appoint further experts at county expense. We affirm in part and reverse in part.
By amended indictment, appellant was charged with first degree murder. Subsequent to his arrest and first appearance, his appointed public defender filed a motion for psychological examination, requesting Dr. Clell Warriner. The court appointed Dr. Warriner to conduct the examination. Thereafter, appellant filed a motion for leave to file a notice of intent to rely on insanity, which motion was granted.
Two other psychologists, Dr. Palmer and Dr. Cartwright, were appointed to examine appellant to determine whether he was insane at the time of the offense. Appellant then filed a motion seeking neurological testing, on the grounds that it would aid the experts in evaluating his mental condition, and in confirming a preliminary diagnosis of episodic dyscontrol syndrome. This syndrome is of fairly recent recognition in psychiatric circles, and causes episodes of seizures during which the person loses consciousness and often acts destructively.
At a subsequent hearing on appellant's competency to stand trial, the defense sought to have James Beller qualified by the court as an expert witness to testify as to his diagnosis that appellant suffered from the syndrome and had been unable to appreciate his actions at the time the victim was murdered. Beller, who at the time had a masters' degree in clinical psychology, worked for Dr. Warriner and had administered a battery of tests to appellant at Dr. Warriner's directions. Despite evidence of Beller's qualifications and experience in the mental health counseling area, and in particular, in the area of the syndrome, the court ruled Beller was not an expert on the basis that Beller was not licensed in Florida as a psychologist, and was thus not qualified as an expert "in the legal sense to express an opinion as to the broad area of psychology ... and also the area of neuropsychology" being offered by the defense. The court went on to stress that Dr. Warriner would testify as to the evaluation of the tests based on Beller's recommendations, and that Beller would testify in order to provide the basis for the results of the test.
At the competency hearing, Dr. Cartwright testified that appellant was competent to stand trial, and admitted that he was only "somewhat familiar" with the diagnosis of episodic dyscontrol syndrome, although he had not examined appellant for the syndrome. Dr. Palmer also concluded that appellant was competent to stand trial, and though he was vaguely familiar with the syndrome, he voiced his disagreement with it.
Dr. Warriner testified that there was a "reasonable expectation" that appellant suffered from episodic dyscontrol syndrome based upon the tests Beller had administered to appellant. However, Dr. Warriner admitted that the reason he requested Beller to administer the tests was not only because Beller was able to administer tests with which Warriner was only marginally familiar, but because Beller had read more in the field of episodic dyscontrol syndrome than had Warriner. Nonetheless, the court remained steadfast in refusing to permit Beller to testify as an expert.
Appellant was thereafter found competent to stand trial. The court granted appellant's motion for further testing and appointed, without objection, Dr. Walker, a neurologist, with leave to reapply for another expert. The court then allowed appellant to proffer Beller's testimony, which revealed that he believed appellant suffered *469 from episodic dyscontrol syndrome, epileptoid type. He maintained that his diagnosis could be confirmed by an alphachloralose series of EEGs which would involve chemical induction to raise or lower the seizure threshold.
Appellant filed another motion to authorize consultation with Richard Ratner, M.D., of Washington, D.C., and Manuel Chaknis, Ph.D., of Jacksonville. The defense maintained that these experts were crucial to appellant's insanity defense because the court had excluded Beller as an expert witness, and pointed out that an indigent was permitted by statute to consult with experts at county expense. The State opposed the motion because two experts had already been appointed. Defense counsel maintained that Dr. Ratner should be appointed because he was a psychiatrist who was familiar with the syndrome. The court granted the motion to have Dr. Chaknis as a consultant, but not Dr. Ratner.
Later, counsel again moved for the entry of an order authorizing appellant to be examined by Dr. Russell Monroe, of Baltimore, Maryland. Counsel stated that a CAT scan conducted on appellant had proven to be normal, and stated that Dr. Monroe was the only physician who could perform the alphachloralose EEG. Counsel also requested that a further scan of the brain, termed a nuclear magnetic resonance, be performed, either in Gainesville or Mobile, Alabama. Counsel maintained that these tests were needed to confirm or deny the presence of the syndrome. However, the court denied the motion by written order finding "that all laboratory findings authorized by the Court to the state are negative as to brain abnormalities and that these additional tests appear excessive and beyond the needs of the experts to express opinions as to the defendant's medical and psychological conditions at the time of the offense."
The court subsequently denied an eleventh hour motion filed by the defense asking the court to reverse its prior ruling and allow Beller to testify as an expert.
During trial, Dr. Warriner testified as an expert that he utilized Beller's findings to form his conclusion that appellant had suffered from organic brain injury that might lead to impulsiveness. In his opinion, appellant's capacity to form the specific intent to kill was diminished or subsequently impaired. Upon further redirect examination, Dr. Warriner testified that there was a possibility that appellant suffered from episodic dyscontrol syndrome, which syndrome would be consistent with a head injury appellant had suffered in 1965.
Beller testified only as to the specifics of the test he had administered to appellant and the scores appellant had received. He was not allowed to give any opinions or conclusions relating to the meaning of those scores. After the jury was released for the day, the defense again proffered Beller's testimony, which established his diagnosis that appellant suffered from episodic dyscontrol syndrome, supported by appellant's history of drug abuse and alcoholism. Beller maintained that the condition could cause a seizure, which would interfere with appellant's ability to reflect or premeditate on his actions. In Beller's opinion, at the time of the homicide, appellant was unable to appreciate the nature and quality of his acts or to know the difference between right and wrong. He stated that his diagnosis could be confirmed with an alphachloralose EEG or by a nuclear magnetic resonance tomography. He maintained that appellant's condition could not be detected by the usual EEG and CAT scans.
Dr. Chaknis testified that the tests he had given appellant revealed some brain damage, and that his ability to formulate the intent to kill was substantially impaired. He was of the opinion that he could not rule out that appellant was legally insane at the time of the crime, however, he was of the opinion that appellant did not suffer from episodic dyscontrol syndrome. Nevertheless, during a proffer, Dr. Chaknis testified that episodic dyscontrol syndrome would render someone legally insane during the crime, and that that possibility could not be ruled out in appellant's case.
*470 The State presented the testimony of Dr. Walker, the previously appointed neurologist, who testified that appellant's EEG and CAT scan showed no organic problem. Further, Dr. Palmer testified that he found no evidence that appellant was insane, but he admitted he had not given appellant a complete neurological battery.
During a charge conference, appellant requested various instructions on the defense of insanity, which instructions were denied because the court found no evidence of insanity had been heard by the jury. Following its deliberations, the jury returned its verdict of guilty of first degree murder, and appellant was subsequently sentenced to life imprisonment with a mandatory minimum sentence of twenty-five years.
On appeal, appellant challenges the trial court's refusal to allow James Beller to testify as an expert witness, arguing that he was thereby denied his constitutional rights to a fair trial and to present witnesses in his defense. Appellant also challenges the court's denial of his motions to appoint further experts at county expense, maintaining that he was thereby denied his constitutional rights to due process, to a fair trial, to present witnesses in his defense, and to equal protection of the law.
We find merit in appellant's first point and hold that the trial court abused its discretion in denying appellant's request to have James Beller testify as an expert witness. The record clearly shows that the reason the trial court refused to qualify Beller as an expert was because it agreed with the prosecutor that appellant is not qualified since he is not licensed in this state as a psychologist. However, it is equally clear that a witness need not have a specific degree or license in order to testify as an expert. Section 90.702, Florida Statutes, specifically provides that a witness may be qualified as an expert "by knowledge, skill, experience, training, or education... ." In Allen v. State, 365 So.2d 456 (Fla. 1st DCA), cert. dismissed, 368 So.2d 1373 (Fla. 1978), this Court expressly held that neither a doctorate nor prior experience as an expert witness are essential prerequisites to being qualified as an expert witness. See also Salas v. State, 246 So.2d 621 (Fla. 3d DCA 1971). As pointed out by Professor Ehrhardt:
An expert is defined in section 90.702 as a person who is qualified as an expert in a subject matter "by knowledge, skill, experience, training, or education." ... It applies not only to persons with scientific or technical knowledge but also to anyone with any specialized knowledge... . A witness may qualify as an expert by his study of authoritative sources without any practical experience in the subject matter.

C. Ehrhardt, Florida Evidence § 702.1 (Second Ed. 1984) [footnotes omitted] [emphasis added].
In the instant case, although Beller admittedly did not possess a doctoral degree in psychology, at the time of the competency hearing he would have been eligible within a year to be licensed as a mental health counselor. Further, Beller testified that he had taught at the University of Southern California, had given seminars before three public agencies in Florida, had previously testified in court three times as an expert, had taught biology and physics, and had studied temporal lobe epilepsy. As a psychological associate working under Dr. Warriner's license and supervision, he performed psychotherapy, psychological assessments, and neuropsychological assessments. Moreover, Dr. Warriner testified that the reason he asked Beller to do the testing on appellant was not only "because he does some tests with which I am only marginally familiar and have not been trained as thoroughly as he, but in addition to that he has read more in that field [episodic dyscontrol syndrome] than I." In Dr. Warriner's opinion, Beller was "a person with more depth and breadth of expertise in that particular field" than he.
Although whether a witness is qualified as an expert is a preliminary question of fact which must be determined by the trial court in the court's discretion, Ehrhardt, Florida Evidence, supra, at 396, in the instant case, because the trial court premised its denial to qualify Beller as an *471 expert on the fact that Beller was not a licensed psychologist, we find the trial court abused its discretion. By that abuse, appellant was effectively deprived of his right to a fair trial and to present witnesses on his behalf. This is so because Beller was the only witness who was willing to categorically diagnose appellant as suffering from episodic dyscontrol syndrome which would have rendered him incapable of forming a premeditated intent to commit the murder. Significantly, despite those witnesses who did testify, the trial court refused to give the tendered instruction on insanity on the basis that no evidence had been adduced to present that defense to the jury. Cf. Johnson v. State, 408 So.2d 813 (Fla. 3d DCA 1982). Accordingly, we must reverse on this point and remand for a new trial.
However, we nonetheless find that the trial court did not abuse its discretion in refusing to appoint further experts at county expense. Section 916.11(1)(b), Florida Statutes, clearly directs that the court may appoint "no more than three nor fewer than two experts to determine issues of the mental condition of a defendant in a criminal case, including the issues of ... insanity... ." Rule 3.216(a), Florida Rules of Criminal Procedure, is even more restrictive, stating that the court may appoint one expert to initially report to the defense only, and only two if insanity is to be pursued. Although appellant relies strongly upon the holding in Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), that case is distinguishable on the basis that the court therein refused to appoint even one psychiatrist. Moreover, the Supreme Court in fact noted in Ake that many states currently provide psychiatric assistance to indigent defendants, without resulting financial burden "especially ... when the obligation of the State is limited to provision of one competent psychiatrist, as it is in many states and as we limit the right we recognize today." 470 U.S. at 79, 105 S.Ct. at 1094-95, 84 L.Ed.2d at 63. [Emphasis added.] Florida exceeds the Ake standard by permitting up to three mental health experts to be appointed. In the instant case, appellant received five, and arguably six, experts. As specifically held in Ake, an indigent defendant, although entitled to "an adequate opportunity" to present a defense, is not entitled "to all the assistance that his wealthier counterpart might buy," and does not have a "constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own." Id. 470 U.S. at 83, 105 S.Ct. at 1097, 84 L.Ed.2d at 66. In the instant case, we hold that the trial court did not abuse its discretion in denying further appointment of experts. Cf. Martin v. State, 455 So.2d 370 (Fla. 1984).
REVERSED and REMANDED for a new trial.
MILLS and ERVIN, JJ., concur.