779 So.2d 314 (1999)
Timothy Louis WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 96-01426.
District Court of Appeal of Florida, Second District.
September 8, 1999.
James Marion Moorman, Public Defender and Carol J.Y. Wilson, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee and Patricia E. Davenport, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
Timothy Williams appeals his conviction and sentence for sexual battery, burglary with a battery and aggravated stalking. We affirm the conviction for aggravated *315 stalking without discussion. We reverse the conviction for sexual battery because the trial court erred by allowing the State to present expert testimony on battered spouse syndrome to prove lack of consent. We also reverse the conviction for burglary with a battery because, although there was testimony to support a battery distinct from the sexual battery, we are unable to determine which battery the jury considered and whether the inadmissible testimony contributed to the verdict on this count.
Timothy Williams and Cynthia Page lived together on and off for ten to fifteen years and had children together. Williams and Page had a history of repeated incidents of domestic abuse. In 1994, Page obtained a domestic violence injunction against Williams after which Williams moved across the street from Page and their children. However, he would watch the children on the nights that Page attended school and he continued to have some contact with Page.
On January 17, 1995, Page called the police and reported that Williams had forced his way into her home and sexually battered her. The police arrested Williams and he was subsequently charged with sexual battery by threatening to use force or violence likely to cause serious personal injury, burglary with a battery and aggravated stalking. At trial, it was undisputed that sexual intercourse occurred between Williams and Page. The issue for the jury to determine was whether Page consented to have sex with Williams or was coerced.
Prior to trial, the State filed a notice of intent to introduce expert testimony that Page lacked the ability to consent to sexual intercourse with Williams because she suffered from battered spouse syndrome brought on by previous batterings at the hands of Williams. The defense moved in limine to exclude such evidence and in support of its motion argued that this use of battered spouse syndrome evidence is novel, has not been recognized as a mental defect and has not been recognized as passing the Frye[1] test for the purpose of proving lack of consent. Furthermore, the defense argued, the issue of consent is a factual determination for the jury that, in this case, does not require expert testimony. The State responded by arguing that the Florida Supreme Court has already determined, in State v. Hickson, 630 So.2d 172 (Fla.1993), that battered spouse syndrome is generally accepted in the relevant scientific community and that no additional Frye analysis was needed. The State argued that the expert testimony was relevant and necessary to assist the jury in understanding the victim's perceptions and behavior with regard to the issue of consent. The trial court denied the motion in limine, reasoning that since evidence of battered spouse syndrome is admissible to support a defendant's claim of self-defense under Hickson, it should be admissible to support a victim's claim of lack of ability to give consent.
At trial, Page testified that Williams had a history of harassing, intimidating, and emotionally and physically battering her. She related numerous such incidents. The most recent incident prior to the events giving rise to the sexual battery charge occurred on January 9, 1995, when Williams threatened to kill Page, threw her on the ground, dislocating her shoulder, and choked her for several minutes because he found letters in her dresser that she had written to a man. Eight days later, on January 17, 1995, she was closing the door to her home when Williams pulled the door open, covered her mouth so she could not scream, pushed her into the apartment and closed the door. Once inside, they talked and cried for several minutes. Williams asked her if he could have sexual intercourse with her. Williams and Page's testimonies conflicted as to whether she consented to the ensuing sexual intercourse. Page claimed she twice told Williams no, but then said, "Well, you're going to beat me anyway if I don't," and that Williams shrugged his shoulders and *316 did not deny that he would beat her. She testified that she was in fear for her life and that she cried throughout the whole event.
In a taped statement, Williams denied forcing Page to have sexual intercourse. He stated that he hollered at Page from across the street when she got out of her car and asked if he could see her. Page seemed scared but he told her to calm down, that he just wanted to talk to her and he was not going to bother her. He then went to the door of her apartment and asked if they could go inside so that he could not be seen in case the police drove by. They went inside and began talking and crying together. He stated that, when he asked Page to have sexual intercourse with him, she asked if she had a choice and he told her that she had refused him before and could refuse him then. Williams testified that he asked Page whether having sexual relations would bother her injured arm, and Page said it would not. He said Page told him they should hurry up and get it over with before her mother came by. Williams denied that Page verbally refused to have intercourse with him, and said he did not think she had intercourse with him out of fear.
Dr. Barbara Stein, a forensic psychiatrist, testified, over defense objection, that at the time Williams allegedly raped Page, she suffered from post traumatic stress syndrome caused by Williams' prior beatings, and from battered spouse syndrome, which causes a victim to adjust her behavior to avoid abuse. Dr. Stein recited, as the basis for her opinion, numerous incidents of discord between Williams and Page. Dr. Stein described, in detail, Page's history of being harassed, intimidated, and physically and emotionally battered by Williams. Dr. Stein further testified that as a forensic psychiatrist she used techniques to detect whether a victim was exaggerating or lying. The defense objected several times during Dr. Stein's testimony and moved for a mistrial on the basis that Dr. Stein was improperly vouching for Page's credibility by testifying that, in her opinion, Page was telling the truth and that "she could not have knowingly, willingly and intelligently consented" to have sexual intercourse with Williams. When compared to the testimony of all the other witnesses, including that of the victim, we agree that Dr. Stein's testimony, which lasted approximately one hour and forty minutes, became the primary feature of the trial.
Williams argues on appeal that the trial court erred in denying his motion in limine and his objections in which he sought to exclude Dr. Stein's testimony. We agree. Although Hickson holds that the battered spouse syndrome meets the Frye test and is admissible to support a defendant's claim of self-defense, we do not believe that Hickson stands for the proposition that such evidence passes the Frye test for all purposes. In Ramirez v. State, 651 So.2d 1164 (Fla.1995), the supreme court stated that "[i]n utilizing the Frye test, the burden is on the proponent of the evidence to prove the general acceptance of both the underlying scientific principle and the testing procedures used to apply that principle to the facts of the case at hand." Id. at 1168. Thus, the State had to prove not only the general acceptance of battered spouse syndrome in the relevant scientific community but also the testing procedures used to show that a person diagnosed with battered spouse syndrome lacks the ability to consent to sexual relations with the batterer. We are aware of no scientific basis to support a conclusion that battered spouse syndrome robs a person of the ability to consent and none has been presented for us to consider, de novo, in this appeal.[2] Such a conclusion would seem to convert all sexual relations engaged in by a person suffering from this syndrome into criminal acts by their partner.
*317 However, we need not decide the Frye issue because we conclude that the testimony of Dr. Stein fails to pass the first of the four-step process that governs the admissibility of expert opinion testimony concerning a new or novel scientific principle. This four-step process was explained in Ramirez v. State, 651 So.2d 1164 (Fla.1995):
First, the trial judge must determine whether such expert testimony will assist the jury in understanding the evidence or in determining a fact in issue. Second, the trial judge must decide whether the expert's testimony is based on a scientific principle or discovery that is "sufficiently established to have gained general acceptance in the particular field in which it belongs...." The third step in the process is for the trial judge to determine whether a particular witness is qualified as an expert to present opinion testimony on the subject in issue.... Fourth, the judge may then allow the expert to render an opinion on the subject of his or her expertise, and it is then up to the jury to determine the credibility of the expert's opinion, which it may either accept or reject.
Id. at 1167(citations omitted).
A Frye analysis is necessary only if it is determined that the opinion testimony will assist the jury in understanding the evidence or determining a fact in issue. In this particular case, Page testified, in clear and simple language, that she initially told Williams "No," when he asked to have sex but that she eventually engaged in sex out of fear and only because she believed Williams would beat her if she did not. This is not a factual scenario for which the State needed expert testimony to explain behavior that would otherwise be puzzling to a jury in light of their common sense and experiences. Page testified that she did not willingly consent and Williams testified that she did. There was simply a conflict in the testimony. This case was a contest between the credibility of the story told by Page and the credibility of the story told by Williams. Dr. Stein's testimony significantly vouched for and bolstered the credibility of Page and, therefore, impermissibly intruded into the job of the jury to determine the credibility of the witnesses. Page v. Zordan, 564 So.2d 500 (Fla. 2d DCA 1990). Furthermore, Dr. Stein's presentation of the battered spouse syndrome evidence chronicled, in much detail, numerous prior bad acts committed by Williams, the prejudicial nature of which outweighed any possible probative value. See § 90.403, Fla. Stat. (1995).
Because this case turned on the resolution of the conflict in the statements of Page and Williams, we cannot say the trial court's admission of this expert testimony was harmless error. Accordingly, we reverse Williams' convictions for sexual battery and burglary with a battery and remand for a new trial. Our reversal of these convictions affects the scoresheet in this case. Therefore, we also reverse the sentence on the remaining conviction which, in turn, renders moot the challenges to the sentences which otherwise appear to have merit.
Reversed and remanded.
ALTENBERND, A.C.J., and FULMER and NORTHCUTT, JJ., Concur.
NOTES
[1] Frye v. United States, 293 F. 1013 (D.C.Cir. 1923).
[2] Hadden v. State, 690 So.2d 573 (Fla.1997) (The appropriate standard of review of a Frye issue is de novo).