871 So.2d 303 (2004)
Keith DIRLING, Appellant,
v.
SARASOTA COUNTY GOVERNMENT and Integrated Administrators, Appellees.
No. 1D03-1224.
District Court of Appeal of Florida, First District.
April 20, 2004.
Richard Lovesky, Bradenton and Bill McCabe, Longwood, for Appellant.
Jorge L. Fernandez, County Attorney and Maria D. Korn, Assistant County Attorney, Sarasota, for Appellees.
VAN NORTWICK, J.
In this workers' compensation appeal, Keith Dirling, claimant, appeals a final order of the Judge of Compensation Claims (JCC) which, among other things, denied *304 as untimely the claimant's request for a hearing pursuant to Frye v. United States, 293 F. 1013 (D.C.Cir.1923), with respect to the opinion testimony of Dr. Howard Weiner and denied claimant's petition for benefits based on findings founded in part on the acceptance of Dr. Weiner's opinion testimony. Because it did not become apparent until the final hearing that Dr. Weiner's opinion testimony was based in material part on scientific studies concerning an association between exposure to certain chemicals and chronic obstructive pulmonary disease (COPD), it was error to deny claimant's Frye motion. Accordingly, we reverse and remand for proceedings consistent with this opinion.
Claimant sought various workers' compensation benefits from appellees, Sarasota County and Integrated Administrators, jointly the employer/carrier, on the theory that his COPD was the result of exposure to various chemicals and fumes at his employment as a mechanic and welder. At the request of the employer/carrier, Dr. Weiner performed an independent medical examination (IME) on claimant. In his IME report, Dr. Weiner noted claimant's prior cigarette smoking; genetic factors; history of metal fume fever from employment as a welder; and potential exposure to numerous vapors, fumes and particles that could result in COPD. In the report, Dr. Weiner opined, as follows:
Mr. Dirling has severe COPD secondary to prior cigarette smoking and genetic factors. Mr. Dirling's work site may have contributed to acute/chronic bronchitis and may have resulted in episodes of metal fume fever.
* * *
Based upon all of the records that I have reviewed as well as information that I have obtained directly during this IME, I conclude that Mr. Dirling's work-site was a contributing factor to his total respiratory condition. It is unlikely that his work-site was a major contributing cause to his COPD. I conclude this with the assumption that Mr. Dirling's work-site description is accurate. I state all of this within a reasonable degree of medical certainty.
No deposition was taken of Dr. Weiner.
At the final hearing, the employer/carrier presented Dr. Weiner's testimony telephonically. On direct examination, when questioned about claimant's exposure to chemical agents, pesticides, or herbicides, Dr. Weiner testified that there was no data that would establish that those chemicals caused COPD. Further, concerning the relationship between COPD and welding, Dr. Weiner explained the basis for his opinion:
One certainly can have lung reactions, and those reactions can include conditions such as metal fume fever, chemical pneumonitis[,] hypersensitivity pneumonitis, siderosis ... pneumonia, ... the issue of chronic obstructive pulmonary disease, there is no data which universally supports welders to have COPD on the basis of that occupation.
There are epidemiologic studies which suggest an association, and that association then projects that mild obstructive lung disease may be associated, but there are many studies which state the opposite.
There is no consensus on that at all. And of course, in persons who are smokers, it could be considered a compounding variable, and one would have to be very careful in interpreting any epidemiologic studies as causing COPD in persons who are also heavy smokers.
In response to questions about the scientific studies referred to in a report by another witness, Dr. Weiner stated that, although these types of studies can identify a possible association between exposure *305 and disease, the studies do not conclude that there is any causation. When Dr. Weiner was directly asked if the claimant's work environment could be even a minor contributing cause of the COPD, he opined that "the best I can say from a scientific standpoint is that there would be no consensus to support that it was a minor contributing cause either." Dr. Weiner concluded that claimant's "COPD was and is related to his excessive cigarette smoking and genetic predisposition and cannot attribute any documented causation to his work site."
At that point, counsel for claimant objected to Dr. Weiner's testimony and moved to strike the testimony because it lacked scientific foundation under the Frye standards. Counsel noted that, in his IME report, Dr. Weiner had stated that claimant's COPD was related to his workplace exposure and now was testifying differently based upon scientific studies. In the order on appeal, the JCC denied the claimant's request for a Frye hearing, ruling that the request was untimely.
In workers' compensation cases, when determining the admissibility of expert opinion testimony based upon new or novel scientific principles or methodology, the JCC must determine whether such evidence is sufficiently reliable under the Frye admissibility standards. U.S. Sugar Corp. v. Henson, 823 So.2d 104, 106 (Fla.2002)(Henson II). In the context of a workers' compensation proceeding, any Frye issue should be set forth in the pretrial stipulation, see U.S. Sugar Corp. v. Henson, 787 So.2d 3, 12-13 (Fla. 1st DCA 2000)(Henson I), approved 823 So.2d 104 (Fla.2002), and Frye objections should be raised at the deposition of an expert witness. Id. at 13; see also Hadden v. State, 690 So.2d 573, 580 (Fla.1997)("[I]t is only upon proper objection that the novel scientific evidence offered is unreliable that a trial court must make this determination. Unless the party against whom the evidence is being offered makes this specific objection, the trial court will not have committed error in admitting the evidence."). Further, "[t]he Frye standard only applies when an expert attempts to render an opinion that is based upon new or novel scientific techniques." Henson II, 823 So.2d at 109. Thus, the JCC must make the threshold determination of whether the scientific principle or methodology underlying the expert's opinion is "new or novel." "[W]here a scientific principle has been established and generally accepted in the relevant scientific community, and has also been Frye tested in the legal community, it is no longer new or novel and there is simply no need to reapply a Frye analysis." Williams v. State, 710 So.2d 24, 30-31 (Fla. 3d DCA 1998); see generally, Charles W. Ehrhardt, Florida Evidence, § 702.3 at 627-28 (2003 Ed.). If new or novel scientific principles are at issue, the JCC should perform a Frye analysis following the four-step process set forth in Ramirez v. State, 651 So.2d 1164, 1167 (Fla.1995); see also Henson I, 787 So.2d at 14; see generally, Ehrhardt, Florida Evidence, § 702.3 at 630-33, and David W. Barnes, General Acceptance Versus Scientific Soundness: Mad Scientists in the Courtroom, 31 Fla. St. U.L.Rev. 303 (2004).
Here, the JCC denied claimant's Frye request as untimely because the Frye issue was not included in the pretrial stipulation. Claimant argues that the Frye objection was timely, because it was impossible for the claimant to know prior to the final hearing that Dr. Weiner would provide expert testimony based upon new or novel scientific studies. Claimant notes that Dr. Weiner's IME report gave no indication that he was relying on such studies and his report was favorable to claimant in concluding that claimant's "work-site was a contributing factor to his *306 total respiratory condition." Claimant asserts that it was not until Dr. Weiner changed his opinion to conclude that workplace exposure was not even a minor contributing cause of claimant's COPD that he extrapolated an opinion from scientific studies.
We agree with the JCC that in workers' compensation cases Frye issues should generally be set forth in the pretrial stipulation and raised at the deposition of the expert. This procedural requirement "is based upon the nature of the trial procedure in a workers' compensation proceeding." Henson I, 787 So.2d at 14. Nevertheless, where, as here, the expert's medical report did not disclose that the opinion was based upon scientific studies, no deposition of the expert was taken, and the final hearing is the first time the claimant knew or reasonably should have known that the expert's opinion testimony would present a Frye issue, a Frye motion at the hearing is timely. See Helsman Mgmt. Services v. Garner, 725 So.2d 1188 (Fla. 1st DCA 1999).
Accordingly, we REVERSE and REMAND for further proceedings consistent with this opinion.
BOOTH and LEWIS, JJ., concur.