933 So.2d 1186 (2006)
Mark HAWKINS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D03-4628.
District Court of Appeal of Florida, Fourth District.
June 21, 2006.
Rehearing Denied August 15, 2006.
*1187 Robert C. Buschel of Taylor Hodkin Kopelowitz & Ostrow, P.A., and Eric T. Schwartzreich of Carter Schwartzreich & Yates, P.A., Fort Lauderdale, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING
WARNER, J.
We grant the motion for rehearing, withdraw our prior opinion and substitute the following in its place.
Mark Hawkins appeals his convictions of one count of the unlicensed practice of medicine causing serious bodily injury (death), one count of felony third degree murder, and one count of culpable negligence. The convictions occurred from Hawkins' alleged injection of silicone into the buttocks of the victim, which the state claimed caused her death. Among his many claims of error in his trial and sentence, Hawkins contends that the court erred in allowing the medical examiner to testify that the victim's death was caused by the injection given by Hawkins, because the examiner had no expertise as to the migration rate of silicone in the body. We agree that the medical examiner was unqualified to render the opinion on causation. Because this was the only testimony supporting the third degree murder charge, we reverse as to that conviction and as to the charge of the unlicensed practice of medicine causing serious bodily injury (death).
*1188 This case involves the practice of individuals receiving injections of liquid silicone to enhance body parts. According to the testimony at trial, this is a practice of some people who participate in "pumping parties." On March 20, 2001, the victim, Vera Lawrence, went to the apartment of Corey Williams to receive injections of silicone in her buttocks at one of these parties.
Williams testified that he saw Hawkins and co-defendant, Donnie Hendrix, inject Lawrence with silicone. While at Williams' residence, Lawrence had trouble breathing and intermittently lost consciousness. Williams called 911, and fire rescue came. Because of Lawrence's obesity, it was difficult to transport Lawrence, and she was declared dead at the emergency room, only a few hours after the March 20th silicone injection.
Dr. Erston Price, the associate medical examiner for Broward County, conducted the autopsy. Dr. Price saw innumerable needle marks on Lawrence's body. Most of these marks were older, but some marks were oozing blood, which indicated that they were recent. As Dr. Price conducted the examination, she saw that Lawrence's organs were "oily." She observed this same oily substance oozing out of the tissue at the site of the fresh needle marks. Although Lawrence was grossly obese and had minor medical problems, Dr. Price determined and testified that Lawrence had suffered a massive systematic silicone embolism due to cosmetic injections of silicone. She testified that Lawrence was injected in the subcutaneous tissue in her buttocks, which broke capillaries within the area of the hips and buttocks, and allowed the silicone to travel into the bloodstream. In other words, the silicone essentially clogged the veins and arteries until the heart could not pump blood sufficiently to sustain the body. According to Price, this caused Lawrence's death. This did not result from a silicone injection directly into the vein, but from a non-intravascular injection. Crucial to the state's case, she testified that this was an acute circumstance which could be tied to the March 20th injection. She admitted, however, that there was evidence of chronic use of injections of silicone. Indeed, the evidence showed that Lawrence had many, many injections of silicone over a considerable period of time.
On cross-examination, Dr. Price stated that even though the silicone was not injected intravascularly, it "could [have] migrate[d] into" the bloodstream. She surmised that because Lawrence died shortly after the silicone was injected into her, her cause of death was consistent with the theory that the silicone gained access into the bloodstream through migration. However, she could not conclusively rule out the possibility that prior silicone injections may have contributed to Lawrence's death.
Dr. Price testified to her causation conclusions over the objection of Hawkins that she did not possess the qualifications to opine on the subject of silicone migration. Although she had conducted thousands of autopsies, she had never conducted one where she concluded the cause of death was systemic silicone embolism. She conceded that she was not an expert regarding the mechanism or speed that silicone migrates through the body. She did not review any literature regarding the effects of silicone on the body prior to the drafting of her autopsy report. At trial, she could point to nothing to support her conclusion that an injection of liquid silicone could migrate through the vascular system as quickly as would have been necessary for the silicone injection of March 20th to have caused Lawrence's death. The state offered no other testimony to support its causation theory.
*1189 Hawkins moved for a judgment of acquittal on the charges involving the death, which the court denied. During the defense, Dr. Ronald Wright, the former chief medical examiner for Dade and Broward Counties, testified that Lawrence died from silicone emboli due to chronic systemic emboli which occurred over time and could not be tied to any injections she received on her date of death. The jury convicted Hawkins of third degree felony murder and the unlicensed practice of medicine causing serious bodily injury, as well as culpable negligence. He appeals his convictions.
As the court said in Penton v. State, 548 So.2d 273, 274 (Fla. 1st DCA 1989), "It is axiomatic that the state has the burden of proving each of the various elements of the offense, and that it must, in order to avoid the entry of a judgment of acquittal, produce legally sufficient evidence of each element." One of the elements that the state had to prove for the charges of both third degree murder and the unlicensed practice of medicine causing the victim's death was a causative link between the act of the defendant and the death of the victim. Id.; see also § 456.065(2)(d)2., Fla. Stat.
"In reviewing a motion for judgment of acquittal, a de novo standard of review applies." Pagan v. State, 830 So.2d 792, 803 (Fla.2002). "`A motion for judgment of acquittal should be granted in a circumstantial evidence case if the State fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilty.'" Daniels v. State, 777 So.2d 1113, 1116 (Fla. 4th DCA 2001) (quoting Dupree v. State, 705 So.2d 90, 94 (Fla. 4th DCA 1998)).
First, Dr. Price's testimony that the March 20th silicone injection caused Lawrence's death was inadmissible because she was unqualified to render an opinion regarding silicone migration in the body, the crucial aspect of causation in this case. Her causation opinion hinged on her conclusion that the silicone injected by the shot administered on March 20th, just a short time prior to the onset of Lawrence's breathing difficulties, could have migrated through her body and into her bloodstream at a rapid enough pace to cause the emboli she observed upon autopsy. She did not have the expertise to render that opinion.
This issue combines aspects of the Frye[1] test of the scientific reliability of the opinion given and the qualification of the witness to offer such scientific opinion. These are issues we review de novo. See Ramirez v. State, 651 So.2d 1164 (Fla. 1995); Brim v. State, 695 So.2d 268, 274 (Fla.1997). In this case, Dr. Price's opinion of the cause of death may not have been subject to Frye testing and was within her area of expertise, but her opinion that defendant's act of injecting Lawrence was the cause of her silicone embolism was predicated on a scientific assertion that silicone could migrate through the body with sufficient speed to cause an acute silicone embolism within hours of a non-intravascular injection of silicone into the buttocks. This required Frye testing.
In Ramirez, the court established the four-part test to determine whether such evidence should be admitted:
The admission into evidence of expert opinion testimony concerning a new or novel scientific principle is a four-step process. First, the trial judge must determine whether such expert testimony will assist the jury in understanding the evidence or in determining a fact in issue. § 90.702, Fla. Stat. (1993). Second, the trial judge must decide whether the expert's testimony is based on a scientific *1190 principle or discovery that is "sufficiently established to have gained general acceptance in the particular field in which it belongs." This standard, commonly referred to as the "Frye test," was expressly adopted by this Court in Bundy v. State, 471 So.2d 9, 18 (Fla. 1985), cert. denied, 479 U.S. 894, 107 S.Ct. 295, 93 L.Ed.2d 269 (1986), and Stokes v. State, 548 So.2d 188, 195 (Fla. 1989). The third step in the process is for the trial judge to determine whether a particular witness is qualified as an expert to present opinion testimony on the subject in issue. § 90.702, Fla. Stat. (1993). All three of these initial steps are decisions to be made by the trial judge alone. See Johnson v. State, 393 So.2d 1069, 1072 (Fla.1980), cert. denied, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981); Rose v. State, 506 So.2d 467 (Fla. 1st DCA), review denied, 513 So.2d 1063 (Fla.1987). Fourth, the judge may then allow the expert to render an opinion on the subject of his or her expertise, and it is then up to the jury to determine the credibility of the expert's opinion, which it may either accept or reject.
651 So.2d at 1166-67 (citations omitted). Here, the trial court determined that this was not a Frye issue, but of witness qualifications. Under the first three parts of the Frye analysis, the court erred.
The parties do not dispute the need for expert testimony to establish the causation element. Thus, under the first factor, establishing that the act of injecting silicone into the body non-intravenously can cause an embolism several hours later requires expert testimony.
The second factor is not established in this case. The state must show that the expert's testimony is based on a scientific principle or discovery that is "sufficiently established to have gained general acceptance in the particular field in which it belongs." Brim, 695 So.2d at 273 (quoting Frye, 293 F. at 1014). The migration rate of silicone in the body must be based upon scientific principles of how silicone travels in and is absorbed by the body. Cf. People v. Morris, 8 Misc.3d 360, 793 N.Y.S.2d 754 (N.Y.Crim.Ct.2005) (absorption rate of alcohol is based upon scientific principles); Douthitt v. State, 127 S.W.3d 327 (Tex.Ct.App.2004) (expert's retrograde extrapolation of absorption rate of alcohol unreliable to determine blood alcohol level). Because no testimony was given as to the migration rate or the time it would take, this second requirement was never met.
Even if we may assume that such evidence existed, Dr. Price was unqualified to testify on the subject, as she herself essentially admitted. Section 90.702, Florida Statutes, provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial.
She was not qualified by either training or experience to testify as to the migration rate of silicone in the body and whether an injection given several hours prior to death could be the cause of death. She did not even acquaint herself with any literature on the subject before developing her opinion. In fact, the only scientific evidence offered was a study offered by the defense contradicting Dr. Price's conclusion. At her deposition, she admitted that she did not know the process of how the silicone would migrate from the victim's thighs and buttocks into her bloodstream. From our review of the record, we must conclude *1191 that Dr. Price was not qualified to render her opinion on specific causation that linked the act of the defendant in injecting Lawrence with silicone to her resulting death. Because the three requirements of Frye were not met, her testimony was inadmissible on this issue. Ramirez v. State, 810 So.2d 836 (Fla.2001).
As Dr. Price could not competently give an opinion that the silicone could migrate with sufficient rapidity to cause an acute embolism, the state failed to prove that the act of the defendant caused the death of Lawrence. Further, Dr. Price actually equivocated in her testimony, refusing to rule out the possibility that prior silicone injections which Lawrence received contributed to causing her death in an acute fashion. As the court said in Penton, 548 So.2d at 275, "Because the consequences of a determination of guilt in a criminal case are far more severe than the consequences suffered by a defendant in a tort action, we conclude that a closer relationship between the result effected and that intended or hazarded is required." Without Dr. Price's testimony on causation, the state has failed to prove the necessary elements of the crime.
The improper admission of Dr. Price's testimony at trial does not bar a retrial of Hawkins. In Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988), the Supreme Court stated: "in cases such as this, where the evidence offered by the State and admitted by the trial court  whether erroneously or not  would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial." Id. at 34, 109 S.Ct. 285. Relying on its opinion in Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), the Court in Lockhart distinguished reversals based solely on evidentiary insufficiency, from reversals based on ordinary trial errors such as the improper admission or rejection of evidence. It stated:
While the former is in effect a finding "that the government has failed to prove its case" against the defendant, the latter "implies nothing with respect to the guilt or innocence of the defendant," but is simply "a determination that [he] has been convicted through a judicial process which is defective in some fundamental respect."
Id. at 40, 109 S.Ct. 285 (quoting Burks, 437 U.S. at 15, 98 S.Ct. 2141). See also Pacheco v. State, 698 So.2d 593, 596 (Fla. 2d DCA 1997) (quoting Lockhart, 488 U.S. at 40, 109 S.Ct. 285) (stating "retrial is permitted when `a reviewing court determines that a defendant's conviction must be reversed because evidence was erroneously admitted against him, and also concludes that without the inadmissible evidence there was insufficient evidence to support a conviction. . . .'").
In this case, we are reversing Hawkins' convictions based solely on the improper admission of evidence. This is precisely the type of error for which the United States Supreme Court held that retrial is permitted. Thus, Hawkins can be retried in the present case.
We reverse the convictions for third degree felony murder and for the unlicensed practice of medicine causing serious bodily injury and remand for proceedings consistent with this opinion. Because of our resolution on this issue, we did not address the remaining issues raised by Hawkins.
MAY, J., and SWEET, GARY L., Associate Judge, concur.
NOTES
[1] Frye v. United States, 293 F. 1013 (D.C.Cir. 1923).