474 So.2d 873 (1985)
Cynthia E. CRAWFORD, Appellant,
v.
Latha SHIVASHANKAR and Allstate Insurance Company, Appellees.
No. BD-8.
District Court of Appeal of Florida, First District.
August 22, 1985.
Neal D. Evans, Jr., Jacksonville, for appellant.
Carl Scott Schuler, Law Offices of S. Thompson Tygart, Jr., Jacksonville, for appellees.
SMITH, Judge.
Cynthia E. Crawford appeals from an adverse judgment rendered below after a jury trial of her negligence action against appellees. She contends that the trial judge erred in refusing to allow testimony by one of her expert witnesses, Dr. Hartwig, regarding the results of a thermographic examination, introduction of which was sought in support of her claim of permanent injury meeting the threshold requirements of Section 627.737(2), Florida Statutes (1981). Finding no reversible error, we affirm.
Appellant was in an automobile accident in February 1982, involving only slight damage to her vehicle and none to the other car. Following the accident, she was seen and treated by a number of physicians for pain, primarily in the lower neck area. *874 At trial, the thrust of the testimony of these physicians (four in number) was that while objective findings were relatively slight, appellant suffered some degree of permanent injury from the accident. One of these physicians, Dr. McKinnon, a chiropractor, had previously treated appellant for lower neck pain in 1981. He testified that appellant's pre-accident subjective symptomatology was similar to her post-accident condition and that no change was revealed by x-rays. Nonetheless, Dr. McKinnon was of the opinion that appellant had sustained a permanent injury in the accident.
In opposition to appellant's medical evidence, appellees presented Dr. Dyer, who had examined appellant three weeks prior to trial, at which time he found no permanent injury. He stated that he found full range of motion in the neck and upper shoulder regions, no neurological deficits, and no abnormalities observable from x-rays. He diagnosed chronic cervical dorsal syndrome, a diagnosis he said he used when unable to detect objective evidence conforming to a patient's subjective complaints of pain. Dr. Dyer opined that although appellant suffered a strain in her neck as a result of the accident, the injury was not permanent and, in fact, had become fully healed by the time of his examination.
Appellant urges that the trial court erred in disallowing the expert opinion of Dr. Bruce Hartwig, a neurologist, whose proffered testimony was that thermographic examination of appellant revealed the presence of soft tissue injury and that this condition resulted from the accident rather than from some pre-accident cause. The trial court also erred, appellant maintains, in denying admission of the thermogram photographs utilized by Dr. Hartwig. The trial court sustained appellees' objection to the thermograms because of appellant's failure to disclose her intention to introduce them in her pre-trial statement, and upon the court's determination that appellant had failed to show that thermography was a well-established and reliable technique for detecting soft tissue injury. The trial court further ruled that Dr. Hartwig would not be allowed to render an opinion based upon his study of the results of the thermographic tests, since, the court concluded, to rule otherwise would allow appellant to circumvent the court's ruling as to inadmissibility of the thermograms.
Considering first the matter of the trial court's refusal to allow introduction of the thermogram photographs, we find no error. As the trial court correctly found, the photographs were omitted from the exhibit list furnished by appellant pursuant to the court's pre-trial order, and appellant's objection on that ground was properly sustained. Eastern S.S. Lines, Inc. v. Martial, 380 So.2d 1070 (Fla. 3d DCA 1980); Cf., Mr. Land, Inc. v. Rabinowitz, 134 So.2d 859 (Fla. 3d DCA 1961).
Regarding the trial court's refusal to allow Dr. Hartwig's medical opinion derived from the thermogram tests, we find that under the circumstances of this case any error in the court's exclusion of this evidence was harmless.[1] Here, appellant had the benefit of the testimony of four physicians, all of whom were of the opinion that appellant suffered permanent injury from the accident. Furthermore, two of these experts, Drs. Adams and Bremmer, testified that they had access to the thermographic report prepared by Dr. Hartwig when they formulated their opinions concerning appellant's condition. Although we acknowledge appellant's argument that the thermographic evidence would have tended to reinforce the otherwise meager objective evidence of permanency, it also would have been cumulative.
Appellant urges reversal on the strength of the decision in Fay v. Mincey, 454 So.2d 587 *875 (Fla. 2d DCA 1984).[2] In that case, the court had before it the question of whether the trial court erred in excluding a medical expert's opinion, based upon thermographic studies, on the ground that the witness was not sufficiently qualified in that field. Although finding that the trial court erred in ruling that the witness was not qualified, the appellate court agreed with the trial court's ruling that such evidence was admissible since liquid crystal thermography (LCT) is a sufficiently reliable and acceptable scientific diagnostic procedure to allow its admission into evidence under appropriate circumstances. Fay had successfully introduced the opinion of a second medical expert based upon thermographic studies.
We distinguish Fay v. Mincey from this case. First, as we interpret the facts recited in the opinion in Fay v. Mincey, the trial court's ruling deprived plaintiff of the benefit of recent evidence of permanency, while the defense had recent medical evidence indicating a lack of permanency of her injuries. The exclusion limited the testimony of one of the plaintiff's two medical witnesses, while the defense had the benefit of two adverse medical witnesses. The excluded evidence in this case, by contrast, created no imbalance in the medical evidence, did not deprive appellant of recent evidence of permanency, and was to a great extent cumulative on the issue of permanency. Secondly, we note that in Fay v. Mincey, supra, the trial court had initially determined that thermogram evidence was admissible, based upon uncontroverted evidence presented in that court, and the appellate court was required only to determine that competent, substantial evidence supported the trial court's ruling that LCT had received a reasonable degree of recognition and acceptance among medical/scientific experts within the relevant expert community. Buchman v. Seaboard Coast Line Railroad Company, 381 So.2d 229 (Fla. 1980); Key v. State, 430 So.2d 909, 910 (Fla. 1st DCA 1983). In the case before us, on the other hand, the trial judge was not satisfied, based upon the evidence presented before him, that LCT had reached the degree of acceptability required for admissibility.[3]
The determination of whether the reliability and acceptability of LCT in the relevant scientific community has been adequately proven in a given case lies within the sound discretion of the trial court. Key v. State, supra; see also, Guy v. Knight, 431 So.2d 653 (Fla. 5th DCA 1983); Rodriguez v. State, 327 So.2d 903 (Fla. 3d DCA 1976), cert. den., 336 So.2d 1184 (Fla. 1976); Coppolino v. State, 223 So.2d 68, 70 (Fla. 2d DCA 1968), appeal dismissed, 234 So.2d 120 (Fla. 1969), cert. den., 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 794 (1970). Moreover, the burden is upon appellant to establish on appeal that the trial court's resolution of this issue was an abuse of discretion. Upchurch v. Barnes, 197 So.2d 26 (Fla. 4th DCA 1967). Here, we detect substantial differences in the quantum and *876 quality of the proof offered below as compared with that in Fay v. Mincey, both as to the thermographic technique itself and the qualifications of the witness who testified concerning the procedure.[4] Although we do not disagree with the holding of Fay v. Mincey, which basically affirms the trial court's ruling in that case that admissibility of thermogram evidence had been satisfactorily established, neither are we compelled to disagree with the ruling of the trial court in the case before us. The applicable standard for our review is whether an abuse of discretion has been shown. Hawthorne v. State, 470 So.2d 770, 773 (Fla. 1st DCA 1985) (citations omitted). Given the "dearth of literature and specific case law to guide the trial and appellate courts" on the specific issue raised below, Coppolino, supra, at 70, we cannot say that appellant has carried this burden.[5]
The judgment appealed is AFFIRMED.
MILLS and THOMPSON, JJ., concur.
NOTES
[1] The fact that the thermograms themselves were not admitted into evidence would not in itself preclude admission of Dr. Hartwig's opinion based upon his analysis of the thermograms, since he testified that the data revealed by the thermograms were reasonably relied upon by experts in the field of neurology in forming opinions. Sikes v. Seaboard Coast Line Railroad Company, 429 So.2d 1216 (Fla. 1st DCA 1983), pet. for rev. den., 440 So.2d 353 (Fla. 1983).
[2] It does not affirmatively appear from the record, so far as we have been able to determine, that the decision in Fay v. Mincey was brought to the attention of the trial judge. Trial of this cause commenced approximately ten days after the opinion in Fay v. Mincey first appeared in the July 6, 1984 issue of Florida Law Weekly. We also note, however, that Fay v. Mincey did not become final until denial of rehearing on July 26, 1984, at which time trial of the present case had been concluded.
[3] Dr. Hartwig testified on proffer that "Johns Hopkins has been using thermography since 1970 in [their] Neurosurgery Department[,]" Georgetown University has "several people that are very interested in [thermography]," and that "one of the leading proponents of thermography is at UCLA." He also offered a description of thermography as a diagnostic tool utilizing infrared photography to diagnose nerve and muscle injuries. Finally, he explained the theoretical basis of thermography, as compared to x-rays, in discerning otherwise undetectible soft tissue injuries. He also testified that, in his opinion, neurosurgeons in the Jacksonville area accepted thermography as a reliable scientific technique in the detection of soft tissue injuries. The only reference Dr. Hartwig made to scientific literature on the subject of thermography was his testimony that he had read a book written by Dr. Harry Rein, owner of Thermographic Medical Associates, Inc., a thermographic photography franchise business of which Dr. Hartwig was a franchisee. No scientific literature on thermography was introduced below.
[4] As to the quantum of proof, compare Footnote 1, supra, with Fay v. Mincey, p. 589, n. 2 and 591-592. Although it is true Dr. Hartwig testified that, in his opinion, thermography had received general acceptance in the relevant scientific community, the trial judge was not bound to accept this bald assertion, unsupported by any other evidence in the record. Nettles v. State, 409 So.2d 85 (Fla. 1st DCA 1982), pet. for rev. den., 418 So.2d 1280 (Fla. 1982); accord, Ehrhardt, Florida Evidence, § 704.1 (2d Ed. 1984), at 413. As to the quality of the proof, Dr. Hartwig admitted that the only training he had received in thermography was a three-day course taught by Dr. Harry Rein, owner and franchiser of Dr. Hartwig's thermographic medical associates franchise. Dr. Hartwig acknowledged receiving no thermographic training in medical school. Moreover, while Dr. Hartwig testified of being "fairly extensively read" in the thermography literature, he named only one treatise specifically: Thermography for Medical Specialists, by Dr. Rein. Compare, the qualifications of Fay's proffered chiropractic expert on thermography in Fay v. Mincey, p. 592. The determination of an expert's qualifications is one of fact to be decided by the trial court upon the testimony adduced, subject to review for an abuse of discretion. Dedge v. State, 442 So.2d 429, 431 (Fla. 5th DCA 1983); Cf., Hawthorne v. State, 408 So.2d 801 (Fla. 1st DCA 1982), pet. for rev. den., 415 So.2d 1361 (Fla. 1982) (error to find expert testimony on "battered wife syndrome" per se inadmissible; cause remanded to allow trial court to determine whether expert proffered qualified to render opinion on subject).
[5] To our knowledge, only two reported cases deal with the precise issue before us; Fay v. Mincey, supra; and Procida v. McLaughlin, 195 N.J. Super. 396, 479 A.2d 447 (Law Div. 1984).