653 So.2d 395 (1995)
Johnnie B. McKENZIE, Appellant,
v.
STATE of Florida, Appellee.
No. 92-3303.
District Court of Appeal of Florida, Fourth District.
January 11, 1995.
Rehearing and Rehearing Denied; Certification of Questions Denied May 11, 1995.
*396 F. Lee Bailey and David M. Schultz of Bailey, Fishman, Freeman & Ferrin, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Don M. Rogers, Asst. Atty. Gen., West Palm Beach, for appellee.
Rehearing and Rehearing En Banc Denied; Certification of Questions Denied May 11, 1995.
WARNER, Judge.
Appellant challenges his conviction for official misconduct and grand theft, contending that the trial court erred in refusing to admit evidence of a polygraph examination. While appellant proffered evidence which would tend to support its present scientific acceptance and reliability, the trial court refused its admission. Finding that the trial court did not abuse its discretion, we affirm.
In preliminary proceedings, appellant filed a motion seeking to admit the results of a polygraph examination which he had taken. The state refused to stipulate to its admission. While acknowledging that Florida had long held that such evidence was inadmissible, Delap v. State, 440 So.2d 1242 (Fla. 1983), the defense suggested that the trial court follow the Eleventh Circuit in approving a limited admissibility of such evidence. U.S. v. Piccinonna, 885 F.2d 1529 (11th Cir.1989). In Piccinonna the Eleventh Circuit re-examined en banc the rule of Frye v. United States, 293 F. 1013 (D.C. Cir.1923), and its principle that scientific evidence "`must be sufficiently established to have gained general acceptance in the particular field in which it belongs.'" Id. at 1531 (citing Frye, 293 F. at 1014). The Piccinonna court noted that even under Frye's standard, polygraph testing may be admissible. Id. at 1532. The court pointed to the advances in the field resulting from better equipment and examiners and the fact that government agencies often rely on the polygraph test. Id. at 1533. The Piccinonna court held that in addition to admissibility upon stipulation, polygraph evidence may be admitted when used to impeach or corroborate the testimony of a witness at trial. Id. at 1536. The court outlined three preliminary considerations for admissibility. First, the party planning to use the evidence at trial must provide adequate notice to the opposing party that the expert testimony would be offered. Second, the proponent must give the opposing party an opportunity to have its own polygraph expert examiner administer a test covering substantially the same questions. Finally, the court cautioned that although it held that polygraph evidence may be used to impeach or corroborate, it did not mean that courts could ignore the Federal Rules of Evidence for the admissibility of corroboration or impeachment testimony. Id. Nevertheless, the court in the end stated that even where the three conditions are met, admission of polygraph evidence for impeachment or corroboration purposes is left entirely to the trial judge's discretion after it examines whether the evidence will assist the factfinder in resolving the issue and whether it is relevant and not unduly prejudicial. Id. at 1537. Absent a clear abuse of discretion the trial court's ruling will not be disturbed. Id.
In a considerable dissent, Judge Johnson, writing for three other judges of the court, attacked the majority's statement that the polygraph is generally accepted in the scientific community. "In fact, the scientific community remains sharply divided on the reliability of the polygraph." Id. The dissent marshalled the facts and arguments against its acceptance as reliable, concluding that it "relies upon a highly subjective, inexact correlation of physiological factors having only a debatable relationship to dishonesty as such. The device detects lies at a rate only somewhat better than chance." Id. at 1542.
In further support of appellant's motion to admit the polygraph, the defense attached and proffered a considerable volume of materials supporting its general acceptance. Most of the materials consisted of articles by well-established polygraph examiners, excerpts from publications by the American Polygraph Association, a Department of Defense *397 study of the accuracy and utility of polygraph testing, and a lengthy article entitled "Polygraph and the Law" by Norman Ansley. The articles stressed the reliability of the polygraph, detailing the pervasive use of polygraphs by various law enforcement agencies, employers, insurance companies and others. One of the studies concluded that if specific testing conditions and operator training requirements were met, the accuracy rate was approximately 90%. See Validity and Reliability of Detection of Deception, Final Report for the National Institute of Law Enforcement and Criminal Justice Law Enforcement Assistance Administration, U.S. Department of Justice (1976). Moreover, appellant also offered the deposition of former state attorney David Bludworth who testified that assistant state attorneys in his office would sometimes make decisions to dismiss a case on the basis of polygraph tests, although the office did not have any policy on their use.
The trial court considered the motion and the Piccinonna case and determined that it agreed with the dissent's characterization that the test was still not scientifically reliable. Noting that he was bound by the decision in Delap, the trial court denied the motion.
The supreme court first rejected the admissibility of the polygraph in Kaminski v. State, 63 So.2d 339 (Fla. 1952), over forty years ago. It relied on Frye, which had held the systolic blood pressure deception test inadmissible because it had not gained general acceptance "among physiological and psychological authorities as would justify the courts in admitting expert testimony deduced from the discovery, development, and experiments thus far made." 293 F. at 1014. The court has continued to adhere to its determination of inadmissibility through Delap. However, it has never again addressed the reliability and general acceptance of the test to determine whether advancements in testing techniques and instrumentation warrant its admission.
Appellant's proffered evidence and articles reveal that polygraph tests have gained increased reliability and acceptance in the scientific community. Specifically, one of the proffers appellant attached to his motion was a summary of testimony of Frank S. Horvath in a proceeding before an Illinois court in 1985. In his testimony, he states that within the discipline of psychophysiology, which is the parent discipline of polygraph testing, sixty percent of psychophysiologists thought that the polygraph evidence was reliable enough to use in court.
It would seem that our courts have not been exposed to the advancements in polygraph reliability since the adoption of Frye forty years ago. In the instant case appellant put before the court a wealth of literature on the reliability of the polygraph test, and the state proffered none. Nevertheless, the trial judge adopted the dissent in Piccinonna as its opinion, noting that he felt bound by the forty years of precedent in refusing admission of polygraph evidence in the courts of this state. However, if the Frye rule is based on the general acceptance of the test in the scientific community, then it is an evidentiary test. The determination of whether a scientific test is sufficiently reliable rests within the sound discretion of the trial court based upon the evidence presented to it. Crawford v. Shivashankar, 474 So.2d 873, 875 (Fla. 1st DCA 1985). In the converse situation to that presented with the polygraph, the supreme court has held that where a litigant wants to challenge a scientific test which has already gained acceptance in a substantial number of cases, the litigant must make a timely request for such an inquiry supported with authorities indicating that there may not be general scientific acceptance of the technique employed. Correll v. State, 523 So.2d 562, 567 (Fla. 1988). The same type of inquiry should be made, as was requested here, where a litigant is attempting to gain court recognition of a scientific procedure.
Nevertheless, in the instant case, despite the proffered evidence, the trial court accepted the Piccinonna dissent's characterization of the test as unreliable. While there was substantial evidence to support increased reliability, the evidence of general acceptance was not as strong. Mr. Horvath's recitation that sixty percent of the psychophysiologists consider it sufficiently reliable to justify admission *398 is about the only evidence of general acceptance. We understand that the standard of general acceptance of scientific tests is that "the reliability of the results are widely recognized and accepted among scientists." Stevens v. State, 419 So.2d 1058, 1063 (Fla. 1982). While unanimity is not essential, we cannot consider a trial court's rejection of the admissibility of this evidence as an abuse of its discretion, particularly where the opinions vary so greatly on the validity of the underlying scientific principles of the test. See Piccinonna at 1538-39. Thus, based upon the record presented in this case, we cannot say that the trial court abused its discretion in refusing to admit the polygraph test results.
We find no reversible error in the remaining issues raised on appeal.
Affirmed.
GLICKSTEIN and FARMER, JJ., concur.