679 So.2d 861 (1996)
STATE of Florida, Petitioner,
v.
Johnny A. SANTIAGO, Respondent.
No. 95-3829.
District Court of Appeal of Florida, Fourth District.
September 18, 1996.
Robert A. Butterworth, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for petitioner.
Karen M. Gottlieb, Coconut Grove, and Robert E. Godwin, Miami, for respondent.
KLEIN, Judge.
The trial court, after a pretrial evidentiary hearing, ruled that the result of defendant's polygraph test, which was favorable to defendant, would be admitted in evidence at trial. *862 We grant the state's petition for certiorari because our supreme court has held that polygraph tests are inadmissible as a matter of law. We certify the question as one of great public importance, so that it can be reconsidered in light of current scientific evidence.
Defendant, the respondent, was charged with sexual battery of an adult. He denied the charge, digital penetration of the victim, whom he claims to have had consensual sex with on other occasions.
Defendant was tested by polygraph examiner, George Slattery, who rendered the opinion that defendant was being truthful both as to his innocence and the previous consensual sex. Slattery, who has extensive experience in polygraph testing, testified that when he was testing for a specific purpose, such as whether a person had committed a crime, the reliability rate was 95%. The reliability of polygraph testing, in general, ranges from 78% to 95%. An example of the type of general testing in which the reliability rate would be lower than 95%, would be for employment applicants.
The defense also presented another expert, Kent Journey, who testified about four different national reports on polygraph testing, which in combination demonstrated a 90% reliability factor. He has performed over 4,000 polygraph tests and believes his tests were 85% reliable. Errors, in his experience, are more likely to reflect an honest person being shown as deceptive, rather than a dishonest person being shown as truthful. The state cross-examined both of the defendant's experts, but did not put on any experts to refute their testimony.
Polygraph evidence has, as a matter of law, long been inadmissible in evidence in Florida. Kaminski v. State, 63 So.2d 339 (Fla.1952). The last time its admissibility was expressly decided by the Florida Supreme Court was in Delap v. State, 440 So.2d 1242, 1247 (Fla.1983), cert. denied, 467 U.S. 1264, 104 S.Ct. 3559, 82 L.Ed.2d 860 (1984), in which the court concluded that polygraph testing had not "gained such reliability and scientific recognition in Florida as to warrant its admissibility." We conclude that the order admitting such evidence is one which we should review by certiorari. State v. Pettis, 520 So.2d 250 (Fla.1988).
Several significant decisions since Delap have convinced us that our supreme court should be given the opportunity to reconsider the issue.
The most significant and influential decision on polygraph testing was one in which the eleventh circuit, sitting en banc, receded from its rule of per se inadmissibility, in United States v. Piccinonna, 885 F.2d 1529 (11th Cir.1989).[1] This court recently recognized the importance of Piccinonna, in McKenzie v. State, 653 So.2d 395, 397 (Fla. 4th DCA), rev. denied, 661 So.2d 824 (Fla. 1995), in which Judge Warner explained:
In Piccinonna the Eleventh Circuit re-examined en banc the rule of Frye v. United States, 293 F. 1013 (D.C.Cir.1923), and its principle that scientific evidence "`must be sufficiently established to have gained general acceptance in the particular field in which it belongs.'" Id. at 1531 (citing Frye, 293 F. at 1014). The Piccinonna court noted that even under Frye's standard, polygraph testing may be admissible. Id. at 1532. The court pointed to the advances in the field resulting from better equipment and examiners and the fact that government agencies often rely on the polygraph test. Id. at 1533. The Piccinonna court held that in addition to admissibility upon stipulation, polygraph evidence may be admitted when used to impeach or corroborate the testimony of a witness at trial. Id. at 1536. The court outlined three preliminary considerations for admissibility. First, the party planning to use the evidence at trial must provide adequate notice to the opposing party that the expert testimony would be offered. Second, the proponent must give the opposing party an opportunity to have its own polygraph expert examiner administer a test covering substantially the same questions. Finally, the court cautioned that although it held that polygraph evidence *863 may be used to impeach or corroborate, it did not mean that courts could ignore the Federal Rules of Evidence for the admissibility of corroboration or impeachment testimony. Id. Nevertheless, the court in the end stated that even where the three conditions are met, admission of polygraph evidence for impeachment or corroboration purposes is left entirely to the trial judge's discretion after it examines whether the evidence will assist the fact-finder in resolving the issue and whether it is relevant and not unduly prejudicial. Id. at 1537. Absent a clear abuse of discretion the trial court's ruling will not be disturbed. Id.

In a considerable dissent, Judge Johnson, writing for three other judges of the court, attacked the majority's statement that the polygraph is generally accepted in the scientific community. "In fact, the scientific community remains sharply divided on the reliability of the polygraph." Id. The dissent marshalled the facts and arguments against its acceptance as reliable, concluding that it "relies upon a highly subjective, inexact correlation of physiological factors having only a debatable relationship to dishonesty as such. The device detects lies at a rate only somewhat better than chance." Id. at 1542.
* * * * * *
It would seem that our courts have not been exposed to the advancements in polygraph reliability since the adoption of Frye forty years ago. In the instant case appellant put before the court a wealth of literature on the reliability of the polygraph test, and the state proffered none. Nevertheless, the trial judge adopted the dissent in Piccinonna as its opinion, noting that he felt bound by the forty years of precedent in refusing admission of polygraph evidence in the courts of this state. However, if the Frye rule is based on the general acceptance of the test in the scientific community, then it is an evidentiary test. The determination of whether a scientific test is sufficiently reliable rests within the sound discretion of the trial court based upon the evidence presented to it. Crawford v. Shivashankar, 474 So.2d 873, 875 (Fla. 1st DCA 1985).
We affirmed in McKenzie, concluding that the defendant had not demonstrated that the trial court had abused its discretion.
Within days of the issuance of our opinion in McKenzie, the Florida Supreme Court established a four-step process for admitting expert opinion testimony regarding new or novel scientific principles in Ramirez v. State, 651 So.2d 1164 (Fla.1995), and made it clear that Florida still follows Frye.[2] The issue in Ramirez was whether an expert could testify that knife marks on the victim's cartilage could be linked to the defendant's knife.
Shortly after McKenzie, Judge Griffin wrote a comprehensive en banc opinion for the fifth district, concluding that a person convicted of lewd assault on a child can be required to take a polygraph test as a condition of probation or community control. Cassamassima v. State, 657 So.2d 906 (Fla. 5th DCA 1995).
Two recent federal decisions are also of interest. In United States v. Posado, 57 F.3d 428 (5th Cir.1995), the court receded from its per se rule against admitting polygraph evidence and remanded for the trial court to consider whether such evidence was admissible in a suppression hearing involving whether the defendant consented to the search. And, in United States v. Crumby, 895 F.Supp. 1354 (D.Ariz.1995), the court admitted in evidence at trial the result of a polygraph exam reflecting that the defendant did not commit the crime.
We grant the state's petition for certiorari and quash the order, but certify the following question as one of great public importance:
ARE THE RESULTS OF POLYGRAPH TESTS INADMISSIBLE IN EVIDENCE AS A MATTER OF LAW?
GLICKSTEIN and PARIENTE, JJ., concur.
NOTES
[1] George Slattery, the polygraph examiner in the present case, was also the examiner in Piccinonna.
[2] Several years after Piccinonna, the Supreme Court concluded that Frye had been superseded by Federal Rule of Evidence 702. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).