RAMIREZ, J.
(dissenting).
I respectfully dissent. The panel is affirming the exclusion of Dr. Robert Kagan, the defense radiologist, because it finds that the trial court did not abuse its discretion, and is affirming the exclusion of the defense neurologist as harmless error. To explain my strenuous disagreement with these conclusions, it is necessary to review how the trial court’s ruling took place.
During jury selection, the trial court asked counsel for both sides to reveal to *536 the venire who they intended to call as witnesses. Plaintiffs counsel reported that he would be calling the plaintiff and an orthopedic surgeon, Dr. Orlando Lopez. Defense counsel reported that he intended to call an orthopedic surgeon, Dr. Salvador Ramirez, as well as an adjuster for State Farm, an accountant, and Dr. Robert Ka-gan.
During his opening statement, plaintiffs counsel explained that the defendant had conceded liability and that the only issue before the jury was damages. He then described the accident and the medical treatment, which included an MRI showing aggravation to the plaintiffs neck. Counsel proceeded to discredit Dr. Ramirez because he had not reviewed the MRI, and contrasted this with the plaintiffs own expert, Dr. Lopez, who did have the benefit of the MRI.
At the conclusion of the plaintiffs opening statement, the trial court, on its own initiative, called for a sidebar conference. The court asked defense counsel if Dr. Ramirez had seen the MRI. Counsel responded that Dr. Ramirez had not done so, but that a radiologist, Dr. Kagan, would interpret the MRI for the defense. He proffered that Dr. Kagan would testify that the MRI did not show anything related to the automobile accident. The court responded that it was “convenient not to have [Dr. Ramirez review] the MRI so that you can have two doctors,” and asked counsel for the plaintiff if he had a radiologist. Counsel responded that he did not and could not bring one in on such short notice. The court then asked plaintiffs counsel if he had Dr. Kagan’s report. At first, counsel responded that he did. The court admonished defense counsel not to “try the same thing again in front of me,” and initially ruled that Dr. Kagan could testify.
At this point, plaintiffs counsel apparently realized that he did not have a report from Dr. Kagan. Defense counsel offered to provide a copy and explained that the doctor would not be testifying for several hours. The plaintiff had made a request for production of all expert reports on July 29, 1997, but Dr. Kagan’s report did not exist at that time.[3] The trial court, nevertheless, excluded the witness because the defendant had “an obligation to update any discovery ... a continuing obligation to provide it.”
A short time later, defense counsel sought to revisit the matter by pointing out that the defendant had responded to the request on August 19, 1997, by objecting to the production as work product.[4] The trial court stated that this was not a good objection and it would have denied the privilege. Although the plaintiff had never pursued the matter further, even after receiving the pretrial catalogue a year and a half later which listed Dr. Kagan, the trial court refused to reconsider its ruling.
The manner in which the issue arose, as well as the parties’ reactions, reveals that it was the trial court who raised the issue, apparently in an attempt to streamline the trial. Plaintiffs counsel was not aware that he did not have a copy of Dr. Kagan’s report. He did not even search through his file to look for the report until the trial court indicated its displeasure and telegraphed its inclination to exclude the witness if a report had not been provided.
*537 The majority apparently recognizes that the trial court’s reason for excluding Dr. Kagan-the continuing duty to update discovery-was legally incorrect because it quotes from Florida Rule of Civil Procedure 1.280(e), which specifically states that a party who has properly responded to discovery “is under no duty to supplement the response to include information thereafter acquired.” Instead, the majority relies on the defendant’s “violation of the pretrial order, which trumps Rule 1.280(e).”
The Uniform Order Setting Cause for Jury Trial directs the parties to furnish each other with a list of all expert witnesses intended to be called at trial. Furthermore, the order directs that “each party shall furnish all information required by Rule 1.280(b)(4)(A).”[5] (Additional emphasis added). A review of the rule, quoted by the majority in footnote 2, clearly places the burden on the party seeking discovery to request it, either “by interrogatories or otherwise.” There is nothing in the rule that compels a party to furnish anything in the absence of a request. Thus, by simply ordering a party to furnish the information required under Rule 1.280(b)(4)(A), the pretrial order adds nothing to a party’s obligation to provide discovery.
The majority also cites Binger v. King Pest Control, 401 So.2d 1310 (Fla.1981), a case involving the nondisclosure of the identity of an impeachment witness. Here, the plaintiff knew about Dr. Kagan, as his name had been provided almost two years before trial. The defendant’s pretrial catalog, filed approximately six months before trial, again disclosed his name and address and stated that Dr. Kagan “will testify as to the findings of his examination of the MRI scan of the plaintiff.” The plaintiffs counsel never attempted to depose the doctor or in any way seek to determine what his findings were, either by formal discovery or otherwise.
Even if we assume that there was a discovery violation, Binger does not support the automatic exclusion of a witness. As the supreme court explained:
[A] trial court can properly exclude the testimony of a witness whose name has not been disclosed in accordance with a pretrial order. The discretion to do so must not be exercised blindly, however, and should be guided largely by a determination as to whether use of the undisclosed witness will prejudice the objecting party. Prejudice in this sense refers to the surprise in fact of the objecting party, and it is not dependent on the adverse nature of the testimony. Other factors which may enter into the trial court’s exercise of discretion are: (i) the objecting party’s ability to cure the prejudice or, similarly, his independent knowledge of the existence of the witness; (ii) the calling party’s possible intentional, or bad faith, noncompliance with the pretrial order; and (iii) the possible disruption of the orderly and efficient trial of the case (or other cases). If after considering these factors, and any others that are relevant, the trial court concludes that use of the undisclosed witness will not substantially endanger the fairness of the proceeding, the pretrial order mandating disclosure should be modified and the witness should be allowed to testify.
401 So.2d at 1313-14 (Footnotes omitted).
In our case, the trial court exercised its discretion blindly.. There was no attempt to ascertain what prejudice was visited *538 upon the plaintiff. The only surprise to plaintiffs counsel was that they were able to exclude the defendant’s MRI evidence. Surely counsel could not argue that they were surprised that Dr. Kagan would testify either that the MRI was negative or that its findings were unrelated to the accident. Any experienced trial attorney should have been able to cope with such testimony. There would have been no disruption to the trial if plaintiffs counsel had been given a copy of the report during opening statements, as the witness would not be testifying until after the lunch recess, allowing ample time for review.[6]
As we recently stated in Pascual v. Dozier, 771 So.2d 552 (Fla. 3d DCA 2000):
The right to call witnesses is one of the most important due process rights of a party; accordingly, the exclusion of the testimony of expert witnesses must be carefully considered and sparingly done. Furthermore, a trial court should exercise caution when the witness sought to be excluded is a party’s only witness or one of the party’s most important witnesses because if the witness is stricken, that party will be left unable to present evidence to support his or her theory of the case.
Id. at 554 (citations omitted). Here, Dr. Kagan was arguably the defendant’s most important witness because he was the only one that could counter the plaintiffs MRI testimony. Dr. Ramirez had not reviewed the MRI and could not be asked to do so because he had already been deposed by videotape for trial two days before.
The defense might have still been able to present its MRI evidence through its neurologist, Dr. Allan Herskowitz, had he not also been excluded. There was no excuse for excluding this witness as his report had been furnished to plaintiffs counsel in a timely fashion. The majority apparently recognizes that Dr. Herskow-itz’s testimony was erroneously excluded, but concludes that “harmful error has not been demonstrated,” ignoring the fact that the plaintiff was able to dwell on the unre-butted MRI evidence throughout the trial and plaintiffs counsel effectively hammered the defense with this unrebutted MRI testimony during closing argument. My review of the case law does not reveal a single instance where the exclusion of a witness has been found to be harmless, except where the testimony would have been cumulative. See Nicholson v. Hospital Corp. of America, 725 So.2d 1264, 1265 (Fla. 4th DCA 1999); Centex-Rooney Const Co., Inc. v. Martin County, 706 So.2d 20, 26 (Fla. 4th DCA 1997); Crawford v. Shivashankar, 474 So.2d 873, 874 (Fla. 1st DCA 1985). In this case, because not a single defense expert was allowed to testify regarding the MRI evidence, the exclusion of Dr. Herskowitz can hardly be termed as harmless.
I would reverse and remand for a new trial.

. The report is dated June 27, 1999.

. Dr. Kagan had not performed an examination of the plaintiff under Fla. R. Civ. P. 1.360, which would have triggered an obligation to provide a report.

. The majority quotes the order as stating that the "parties produce all information as provided by Florida Rule of Civil Procedure 1.280(b)(4)(A).'' (Emphasis added).

. The gist of the report can be gleaned from one paragraph, which would have taken counsel a few seconds to read:
In summary, there is no objective evidence of any injury to the cervical spine which could be causally related to a motor vehicle accident occurring on 7/31/93.
Specifically, there is no evidence of disc herniation. The degenerative changes noted, which are most prominent at C6/7, take a number of years to occur and represent a pre-existing condition in their entirety.